THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ROBERT ALAN BRIDGEWATER, Defendant-Appellant.

Fourth District   No. 4—92—0180

Argued January 25, 1994.—Opinion filed March 10, 1994.

Daniel D. Yuhas and Lawrence J. Essig (argued), both of State Appellate Defender's Office, of Springfield, for appellant.

Craig H. DeArmond, State's Attorney, of Danville (Norbert J. Goetten, Robert J. Biderman, and Elliott Turpin (argued), all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE COOK delivered the opinion of the court:

Following a bench trial, defendant Robert Bridgewater was convicted of attempt (aggravated criminal sexual abuse). (Ill. Rev. Stat. 1989, ch. 38, pars. 8—4(a), 12—16(c)(1).) Defendant was sentenced to 30 months of probation with conditions including that he serve 180 days in the county jail. Defendant appeals. We reverse and remand for a new trial.

Defendant was charged by second-amended information with aggravated criminal sexual abuse (Ill. Rev. Stat. 1989, ch. 38, par. 12—16(c)(1)) for being a person over 17 years of age who knowingly committed an act of sexual conduct for the purpose of sexual arousal between February 1, 1988, and April 30, 1988, with R.C., who was under 13 years old at the time. Defendant was also charged with attempt (aggravated criminal sexual abuse) (Ill. Rev. Stat. 1989, ch. 38, pars. 8—4(a), 12—16(c)(1)) for being a person over 17 years of age who, with the intent to commit the offense of aggravated criminal

sexual abuse, knowingly performed an act which constituted a substantial step toward the commission of that offense when he pulled down R.C.'s pants, who was under 13 years of age, while himself being nude with the intent to perform an act of sexual conduct with the victim for purposes of sexual arousal. Defendant pleaded not guilty to both charges. Following a bench trial, defendant was acquitted of aggravated criminal sexual abuse, but convicted of attempt (aggravated criminal sexual abuse). Defendant was 23 years old at the time of the conduct and the victim was 12.

The trial court heard argument whether section 115—10 of the Code of Criminal Procedure of 1963 (Code) (Ill. Rev. Stat. 1989, ch. 38, par. 115—10) allowed the admission of hearsay statements made by R.C. when he was 14 years old although the alleged abuse occurred when R.C. was under 13 years old. The trial court ruled the statements were admissible as a hearsay exception pursuant to section 115—10 of the Code, provided the statements were sufficiently reliable. The trial court determined, after hearing the testimony, that the statements were sufficiently reliable and would be admitted.

R.C. testified he was 16 years old, his date of birth is August 8, 1975, and he had been in foster care since September 1985. From February 10, 1988, to January 17, 1989, he lived at the Christian Home for Youth (Home) where defendant was a child care worker. R.C. was placed in the Home because of sexual experimentation with younger children at one of his previous foster homes.

R.C. met defendant at the Home and proceeded to develop a close relationship with him. He stated that defendant had told him almost every day that defendant loved him. He stated that he really cared about defendant at that time because defendant had told him that he would be his big brother, and then defendant had told him that he would be his dad. Defendant took him places and bought him things. On one occasion defendant and R.C. had their picture taken together, and defendant gave R.C. several of the photos to keep.

R.C. testified about inappropriate behavior by the defendant. When they were swimming, defendant would reach up and grab R.C.'s testicles. R.C. and defendant would wrestle at the Home, usually every day, and defendant would grab R.C.'s testicles while wrestling. On one occasion, when R.C. was in the hospital, defendant was helping him go to the bathroom, and defendant asked him how far along he was in puberty and then examined his private parts, telling him he was quite far along. On another occasion defendant told R.C. that he could tell him how to get rid of a "hard on" that lasted a long time should R.C. ever need help with that.

R.C. testified about the events that occurred Easter weekend

1988. None of the other children were at the Home that weekend. Defendant was supposed to be with R.C. during the day, but another staff member was supposed to work at night. However, the other staff member did not come in and R.C. and defendant stayed at the Home alone both nights. On Saturday R.C. and defendant went to Terre Haute, Indiana. They returned fairly late and R.C. could not remember what they did until bedtime. R.C. usually wore long sweatpants or full-length blue jeans to bed. There were two beds in his room and defendant pushed the two beds together that night. R.C. then went to sleep. At some point during the night, he awoke to find defendant pulling down his pants and his underwear. His pants were around his knees by the time he realized what was occurring. R.C. asked defendant what he was doing and defendant said "God said it was okay." At the time this was occurring defendant was naked and his penis was hard. R.C. pulled his pants up, rolled over and went to sleep, and defendant did not bother him anymore that night. R.C. testified that he tried to block out the incident and that he was able to like defendant again.

R.C. was upset when defendant first left the Home and he ran away several times. He then adjusted and graduated successfully from the Home and was placed in a foster home with the Powells. The Powells lived only three blocks from defendant, and defendant began contacting R.C. again; defendant made him a birthday card and tape, and sent R.C. other cards. R.C. began having emotional problems, attempted suicide, was placed in the Edgar County Children's Home, and eventually was placed in a foster home with the Stantons.

Sometime after living with the Stantons, R.C. became involved with the Royal Rangers. Unbeknownst to R.C. when he first became involved with the Rangers, defendant was the head of the Rangers. At no time, however, was defendant alone with R.C. R.C.'s foster father was always with him at Rangers functions. While in the Rangers, R.C. became aware that defendant was doing the same things to other boys that defendant had done to him. R.C. testified that during swimming defendant would grab the other boys' testicles. He stated that a child named A. and a child named C.B. told him that defendant was doing the same type of things to them. R.C. testified that C.B. later threatened him.

R.C. testified that when he found out defendant was doing these things to others, he began to remember what defendant had done to him and he went back to the Home to speak with the Home's therapist, Vern Bergkoetter. On July 10, 1990, he told Vern about what had happened on Easter weekend 1988. He then gave a

statement to somebody from the police department and to somebody from DCFS. He also testified he had never told defendant that someone was trying to brainwash him to get him to make up these allegations.

The State offered the testimony of Vern Bergkoetter, Investigator Gene Woodard of the Danville police department, and Joe Burns from DCFS under section 115—10 of the Code. This testimony essentially paralleled R.C.'s testimony at trial.

Defendant testified on his own behalf. At the time of trial, he was 27 years old. Defendant denied R.C.'s allegations regarding any inappropriate behavior, but admitted a close relationship with R.C. that developed while he was working at the Home.

We first consider whether the trial court erroneously admitted the statements of Bergkoetter, Woodard, and Burns of what R.C. told them. The trial court ruled that because R.C. was under the age of 13 at the time of the alleged abuse, his statements to Woodard, Bergkoetter, and Burns would be admitted, even though the statements were not made until R.C. was 14 years old.

Section 115—10(a) of the Code provides as follows:

"In a prosecution for a sexual act perpetrated upon a child under the age of 13 *** the following evidence shall be admitted as an exception to the hearsay rule:

(1) testimony by such child of an out[-]of[-]court statement made by such child that he or she complained of such act to another; and

(2) testimony of an out[-]of[-]court statement made by such child describing any complaint of such act or matter or detail pertaining to any act which is an element of an offense which is the subject of a prosecution for a sexual act perpetrated upon a child." Ill. Rev. Stat. 1989, ch. 38, par. 115—10(a).

█ No case law addresses whether section 115—10 permits admission of hearsay testimony made by a child older than 13 regarding abuse which occurred while he or she was under 13. Section 115—10 of the Code is the codification of a hearsay exception created to admit hearsay testimony of young children who have been sexually abused. Exceptions to the hearsay rule which are not "firmly rooted," like section 115—10, require a showing of a particularized guarantee of trustworthiness before any statement is admitted. (*Idaho v. Wright* (1990), 497 U.S. 805, 820-21, 111 L. Ed. 2d 638, 655-56, 110 S. Ct. 3139, 3149-50.) The admission of hearsay statements denies a defendant the opportunity to cross-examine the out-of-court declarant, thereby infringing upon the defendant's right to confront witnesses against him. (*People v. Barger* (1993), 251 Ill. App. 3d 448, 462, 624

N.E.2d 405, 413.) In light of the principles surrounding the admission of a statement as an exception to the hearsay rule, section 115—10 of the Code should be narrowly construed.

■ A narrow construction of the statute requires that its age limit apply to the time the statement was made as well as to the time when the abuse allegedly occurred. We hold that in order for a hearsay statement to be admissible under section 115—10 of the Code, the child must be under the age of 13 at the time the statement was made. This result is consistent with the statutory purpose. An immature victim, a victim under the age of 13, may find it difficult to testify at trial. Such a victim may also be less likely to manipulate his out-of-court statements. The same may not be true of older victims.

■ The second issue is whether the admission of the hearsay statements was harmless error. When the trial court has erroneously admitted a hearsay statement, a reversal is mandatory unless it is clearly shown that the error was not prejudicial. (*People v. Lawler* (1991), 142 Ill. 2d 548, 562, 568 N.E.2d 895, 901; *People v. Carlson* (1982), 92 Ill. 2d 440, 449, 442 N.E.2d 504, 508; see *People v. Zwart* (1992), 151 Ill. 2d 37, 600 N.E.2d 1169.) In other words, an error is harmless only if properly admitted evidence is so overwhelming that no fair-minded trier of fact could reasonably have acquitted. *Carlson*, 92 Ill. 2d at 449, 442 N.E.2d at 508.

In this case, there was error in the admission of the hearsay statements of Bergkoetter, Woodard, and Burns. The error involved not just one, but three instances of hearsay testimony corroborating R.C.'s account. The evidence was closely balanced. In fact, the trial court refused to find defendant guilty of the act of aggravated criminal sexual abuse, although it did find defendant guilty of attempt. Although this was a bench trial, it cannot be said that the properly admitted evidence was so overwhelming, without the erroneously admitted hearsay statements, that no fair-minded trier of fact could reasonably have acquitted defendant. The erroneous admission of the hearsay statements was prejudicial. Therefore, we reverse defendant's conviction; as to defendant's argument he was not proved guilty beyond a reasonable doubt of attempt (aggravated criminal sexual abuse), we find the properly admitted evidence sufficed for double jeopardy purposes to require remand for a new trial.

Reversed and cause remanded.

LUND and GREEN, JJ., concur.