SECOND DIVISION
December 5, 2006

1-05-1433

No. 1-05-1433

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
|     Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
|        v. | ) | |
| | ) | Honorable |
| DAVID OEHRKE, | ) | Catherine M. |
| | ) | Haberkorn, |
|     Defendant-Appellant. | ) | Judge Presiding. |

PRESIDING JUSTICE WOLFSON delivered the opinion of the court:

Frieda Oehrke, the defendant's 91-year-old mother, was brought to the emergency room at Resurrection Hospital, where she told a doctor and a nurse she did not know why her son kept hitting her. The issue in this case is whether Frieda's statements in the emergency room were admissible at the defendant's trial. Because we find the statements were inadmissible hearsay we reverse the defendant's aggravated battery conviction and remand this cause for a new trial.

FACTS

On June 24, 2000, Frieda was taken by paramedics to the emergency room at Resurrection Hospital. She had a one inch bleeding wound on the top of her head, old bruising on the right side of her face, and multiple areas of bruising on her body in

1-05-1433

various stages of healing. Defendant lived with Frieda and was her sole caregiver. On August 24, 2000, Frieda died of unrelated causes.

Prior to trial, the State filed a motion, pursuant to section 115-10.3 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/115-10.3 (West 2000)), to admit Frieda's out-of-court statements through her treating doctor and nurse, two police officers, and an elder abuse investigator. Section 115-10.3 provides for the admission of certain hearsay statements made by an elder adult in a prosecution for elder abuse if the court finds in a hearing conducted outside the presence of the jury that the time, content, and circumstances of the statement provide sufficient safeguards of reliability. 725 ILCS 5/115-10.3 (West 2000).

Following a hearing on the motion, the trial court determined the testimony of Dr. Rachael Burke, Nurse William Babiarz, Officer Paul Zitek, and Detective Terrance Hart was trustworthy and reliable, and would be allowed as an exception to the hearsay rule under section 115-10.3. Before trial, however, the United States Supreme Court decided <u>Crawford v. Washington</u>, 541 U.S. 36, 53-54, 124 S.Ct. 1354, 1366, 158 L.Ed.2d 177, 194-95 (2004), which held the confrontation clause bars the "admission of testimonial statements of a witness who did not appear at

1-05-1433

trial unless he was unavailable to testify, and the defendant had a prior opportunity for cross-examination."

Because of Crawford, the State withdrew its motion to admit the evidence under section 115-10.3. Instead, it offered only the statements Frieda made to Dr. Rachel Burke, an emergency room physician, and Nurse William Babiarz, relying entirely on the common law hearsay exception that addresses statements made for the purpose of obtaining medical diagnosis or treatment. The trial court, over defense counsel's hearsay objections, admitted the statements, holding the common law hearsay exception was satisfied.

Dr. Burke and Nurse Babiarz testified they were the first hospital personnel to treat Frieda at about 10:30 p.m. on June 24. When Nurse Babiarz and Dr. Burke initially asked Frieda what happened, she did not respond and moaned in pain. Defendant was present in the treatment room. Frieda was disoriented and did not know the date. On cross-examination, Nurse Babiarz said Frieda told him "she didn't know what happened" when he first questioned her.

Frieda had a large laceration on the top of her head and a large bruise with a small laceration on her right eyebrow. Frieda also had bruises on her left upper lip, on top of both of her shoulders, and above both of her kneecaps. The numerous

areas of bruising and the appearance of the lacerations led Dr. Burke and Nurse Babiarz to believe the injuries did not occur at the same time. Dr. Burke noted if a person fell to her knees, it would not cause the type of bruising Frieda had above her kneecaps. Dr. Burke also noted she would not expect a person to sustain bruises on the top of her shoulders during a fall.

After Frieda was given medication to raise her blood sugar and became more alert and cooperative, she told Nurse Babiarz "she didn't understand why she [sic] was trying to shut me up, hitting me with his hand." This happened shortly after midnight. Nurse Babiarz then notified Dr. Burke and the police. Defendant was not in the treatment room when Frieda made the statement. When Dr. Burke and Nurse Babiarz went back into the treatment room, Frieda again said she did not know why her son kept hitting her. On cross-examination, Nurse Babiarz agreed Frieda's statement that her son injured her "could have been in response to [his] question or [his] suggestion that her son did it." Frieda's statements were made 90 minutes after she was admitted into the hospital, after Dr. Burke treated Frieda's head wound.

Dr. Burke said Frieda was "somewhat unreliable and only partially oriented" during a few of the occasions when she spoke with Frieda. Dr. Burke noted, however, that Frieda did not seem unreliable when she said her son had hit her. She testified it

was important for Frieda's treatment to know how she had been injured and if she had been injured at the hands of her caregiver. This information would affect Dr. Burke's "final disposition knowing whether she would be safe to go home or not or whether they--she would be cared for at home or not."

Defense counsel objected to the admission of the hearsay statements on the grounds that they did not fit within a recognized hearsay exception, arguing the statements regarding the assailant's identity had nothing to do with her injuries or treatment. The State, relying on child sexual abuse cases, argued an exception applies when the alleged attacker is a family member because it is necessary to know the identity of the abuser to prevent future abuse. The trial court agreed with the State, noting one of the pertinent factors in the child abuse cases was that the victim lived with the alleged abuser. Because defendant lived with Frieda and was responsible for her caretaking, the court found the statements relevant to her care and treatment.

Dr. Mark Dorfman, an emergency room physician at Resurrection Hospital, testified he treated Frieda on June 24, 2000. Frieda had a laceration to her scalp, a laceration over her eyebrow which looked old, swelling around her eye, a small hemorrhage in her eye, and multiple bruises on her back and extremities that appeared to be in different stages of healing.

1-05-1433

Dr. Dorfman opined the injuries were not consistent with Frieda falling out of bed twice on the same day.

Detective Terrance Hart testified he was assigned to investigate a possible aggravated battery against Frieda. Defendant told Detective Hart that Frieda was depressed after she returned home from a hospital stay and had fallen twice. After the second fall, defendant noticed her head was bleeding. Defendant called Dr. Podgers, who advised him to take his mother to the hospital. Defendant told Detective Hart that he was having difficulty taking care of her and was trying to get a homemaker to come in and help.

Defendant showed Detective Hart the bedroom where Frieda fell. Detective Hart saw a large pool of blood on a wooden floor next to the middle of Frieda's bed. A picture of the bedroom, People's Exhibit Number Nine, depicted a wooden stool at the head of the bed and blood on the wooden floor. When asked if the picture accurately depicted the bedroom, Detective Hart said he did not recall the stool being there. He did not document the stool in his report or have it checked for blood.

Defendant agreed to return to the Area 5 police station for further questioning. During questioning, defendant said his mother had fallen down twice. Defendant said Frieda's injuries were cause by the falls, not by him hitting her. After defendant

was arrested and again read his <u>Miranda</u> rights, defendant admitted that he put his hand on his mother's mouth "to shut her up." Defendant said his mother fell and hit her head on a metal object. He did not push her the first time she fell. When Detective Hart asked defendant what he meant, defendant did not answer.

The parties stipulated to the testimony of Kathleen Minogue and Kevin O'Malley, the Chicago Fire Department paramedics called to Frieda's home. Minogue and O'Malley found Frieda face down on the floor by the bed in a pool of blood. There was no object in the area which Frieda could have struck while falling.

The defense presented evidence through a series of stipulations. Marianne Monroe, a registered nurse, treated Frieda on June 25, 2000. When Monroe asked Frieda what happened, Frieda said "I may have fallen." Amy Baldwin, a physical therapist, and Kathy Kornbluth, an occupational therapist, treated Frieda on June 28, 2000. Frieda was oriented only to herself and did not know the date or time. Both Baldwin and Kornbluth concluded Frieda was confused and memory impaired.

The trial court found defendant guilty of aggravated battery and sentenced him to three years' probation. Defendant appealed.

DECISION

I. Confrontation Clause Violations

1-05-1433

Defendant, relying on <u>Crawford</u>, contends Frieda's statements to Nurse Babiarz and Dr. Burke constituted testimonial evidence. Defendant contends their admission at trial, in the absence of an opportunity to cross-examine Frieda, violated his sixth amendment constitutional right of confrontation.

We will not consider a constitutional question if the case can be decided on other grounds. <u>People v. Mitchell</u>, 155 Ill. 2d 344, 356, 614 N.E.2d 1213 (1993); <u>People v. Dixon</u>, 28 Ill. 2d 122, 125, 190 N.E.2d 793 (1963). Because we find the trial court erred in admitting Frieda's hearsay statements under the medical diagnosis and/or treatment exception to the hearsay rule, it is unnecessary for us to consider the <u>Crawford</u> issue presented here. See <u>Mitchell</u>, 155 Ill. 2d at 356.

II. Hearsay Exception

Defendant contends the trial court erred in admitting out-of-court statements Frieda made to Nurse Babiarz and Dr. Burke. We agree.

Once the State abandoned its section 115-10.3 motion, it, and eventually the trial court, relied on the common law hearsay exception for statements made to medical personnel for purposes of medical diagnosis and treatment.

Illinois recognizes the common law exception to the hearsay rule for statements made by a patient to medical personnel for

the purpose of medical diagnosis and treatment. People v. Gant, 58 Ill. 2d 178, 186, 317 N.E.2d 564 (1974); People v. Coleman, 222 Ill. App. 3d 614, 625, 584 N.E.2d 330 (1990). The exception encompasses " 'statements made to a physician concerning the cause or the external source of the condition to be treated.' " Coleman, 222 Ill. App. 3d at 625, quoting Gant, 58 Ill. 2d at 186.

A trial court is vested with discretion in determining whether the statements made by the victim were " 'reasonably pertinent to the victim's diagnosis or treatment.' " People v. Davis, 337 Ill. App. 3d 977, 989-90, 787 N.E.2d 212 (2003), quoting People v. Williams, 223 Ill. App. 3d 692, 700, 585 N.E.2d 1188 (1992). Statements identifying the offender, however, are beyond the scope of the exception. Davis, 337 Ill. App. 3d at 990; People v. Hudson, 198 Ill. App. 3d 915, 921-22, 556 N.E.2d 640 (1990); People v. Taylor, 153 Ill. App. 3d 710, 721-22, 506 N.E.2d 321 (1987).

Notwithstanding, the State contends the trial court properly admitted Frieda's statements identifying defendant as the offender because Frieda, a 91-year-old woman, lived with defendant and depended on his care. The State contends knowing the identity of the abuser was crucial to Frieda's diagnosis and medical treatment in this case because the medical personnel had

to know they were not discharging her back into a dangerous situation. In support, the State cites two child sexual abuse cases where section 115-13 of the Code of Criminal Procedure (725 ILCS 5/115-13 (West 2000), the statutory hearsay exception for statements by victims of sexual offenses to medical personnel, was extended to include a child victim's statements identifying the abuser:  People v. Falaster, 173 Ill. 2d 220, 670 N.E.2d 624 (1996), and People v. Morgan, 259 Ill. App. 3d 770, 631 N.E.2d 1224 (1994).

Section 115-13 is a codification of the firmly-rooted common law hearsay exception allowing statements describing medical history, pain, or sensations for purposes of diagnosis and treatment.  People v. Roy, 201 Ill. App. 3d 166, 179, 558 N.E.2d 1208 (1990).  "The assumption underlying both section 115-13 and the common law exception is that the desire for proper diagnosis or treatment outweighs any motive to testify falsely."  Roy, 201 Ill. App. 3d at 179.  While section 115-13 is not at issue in this case, we find the cases discussing the scope of the statutory hearsay exception help shed light on the scope of the common law exception.

In Morgan, the defendant contended the trial court erred in allowing two doctors to testify regarding his stepson's statements identifying him as the abuser.  The court held

statements by a child abuse victim to a physician during an examination that the abuser is a member of the victim's immediate household are reasonably pertinent to treatment.  <u>Morgan</u>, 259 Ill. App. 3d at 781.  "Because of 'special problems associated with intrafamily sexual abuse, *** the identity of the abuser is often an important element in diagnosing and treating the victim.' "  <u>Morgan</u>, 259 Ill. App. 3d at 781, quoting <u>State v. Vosika</u>, 83 Or. App. 298, 731 P.2d 449, 452 (1987).

In <u>Falaster</u>, the defendant contended the trial court erred in allowing a nurse to testify regarding his eight-year-old daughter's statements identifying him as her abuser.  The court held that, "at least in a family setting, a victim's identification of a family member as the offender is closely related to the victim's diagnosis and treatment in cases involving allegations of sexual abuse."  <u>Falaster</u>, 173 Ill. 2d at 230, citing <u>Morgan</u>, 259 Ill. App. 3d at 781-82.  Defendant was not a stranger the victim would never see again, he was her father.  <u>Falaster</u>, 173 Ill. 2d at 230.  The victim's physical and emotional health, now and in the future, would be affected by her relationship with the defendant.  <u>Falaster</u>, 173 Ill. 2d at 230.  That fact was significant in diagnosing and treating the victim at the time of the abuse and would remain an important fact for future treatment.  <u>Falaster</u>, 173 Ill. 2d at 230.

In Falaster and Morgan the courts recognized intra-family sexual abuse of a child creates unique psychological harm that requires special treatment. See Falaster, 173 Ill. 2d at 230; Morgan, 259 Ill. App. 3d at 781. Identification of a family member as the offender was closely related to the victim's future psychological treatment. See Falaster, 173 Ill. 2d at 230; Morgan, 259 Ill. App. 3d at 781.

In this case, Frieda's statements were made 90 minutes after she was admitted to the hospital, and after Dr. Burke had finished treating Frieda's head wound. Unlike Falaster and Morgan, there is no suggestion in the record that Dr. Burke and Nurse Babiarz questioned Frieda in order to assist in her present or future psychological treatment. Instead, Dr. Burke said she questioned Frieda in order to determine whether it was safe for her to return home to defendant's care.

No Illinois court has extended the medical diagnosis and treatment hearsay exception to include an adult physical abuse victim's statements identifying her attacker. See People v. Cassell, 283 Ill. App. 3d 112, 125, 669 N.E.2d 655 (1996) (statements made by the victim of aggravated criminal sexual assault that she was dragged from her apartment were admissible; however, statements relating to the identity of her attacker, her live-in boyfriend, were not admissible because they were not

necessary for receipt of proper medical treatment.)  In order to find a hearsay exception in this case, we would have to shift the rationale behind the hearsay exception from medical treatment and diagnosis to prevention of future physical harm.  We decline to broaden the terms of the medical diagnosis and treatment exception by judicial fiat, "lest the exception swallow a rule that has served so well for so long."   See People v. Johnson, 296 Ill. App. 3d 53, 65-66, 693 N.E.2d 1224 (1998).

Dr. Burke's and Nurse Babiarz's questions were intended to protect Frieda from returning to an abusive environment, not to assist in her medical diagnosis and treatment.  Dr. Burke's concern for Frieda's safety was laudable, but concern never has been held by any Illinois court to support the medical diagnosis and/or treatment exception to the rule against hearsay.  Therefore, we find the common law exception to the hearsay rule did not apply to Frieda's statements.  We find the trial court erred in admitting the statements at trial.

We must now address the question of whether the trial court's erroneous admission of Frieda's statements identifying defendant as her abuser was harmless error.  People v. Cumbee, 366 Ill. App. 3d 476, 500, 851 N.E.2d 934 (2006).  The admission of the evidence is harmless error if there is no reasonable probability that the verdict would have been different had the

1-05-1433

hearsay been excluded.  People v. Bridgewater, 259 Ill. App. 3d 344, 349, 631 N.E.2d 779 (1994); People v. Bodoh, 200 Ill. App. 3d 415, 432, 558 N.E.2d 178 (1990); People v. Griggs, 104 Ill. App. 3d 527, 531, 432 N.E.2d 1176 (1982).

The record reflects Frieda's statements to Dr. Burke and Nurse Babiarz played a crucial role in this trial.  In reaching its decision, the trial court said: "One of the interesting things that Dr. Burke stated in her notes that she put quotes around the portion where the victim said 'to shut her up.' And this is what she said that's why her son was doing this to her." The trial court also said: "I think its significant that after she was given dextrose, after her son was removed from the room, that she did say in fact to Dr. Burke and to Nurse Babiarz that her son was the one who inflicted these injuries.  That the 'shut up, shut me up' is in quotes."

While Frieda's statements that defendant was trying to "shut her up" were corroborated by defendant's own statement to Detective Hart, Frieda's statements that her son hit her were uncorroborated.  Since Frieda's statements that her son hit her were the foundation of the State's case, we cannot see how the erroneous admission of her hearsay statements was harmless error.

Based on the record, we cannot say "the properly admitted evidence was so overwhelming, without the erroneously admitted

1-05-1433

hearsay statements, that no fair-minded trier of fact could reasonably have acquitted the defendant." See <u>Bridgewater</u>, 259 Ill. App. 3d at 349. We find the trial court's admission and use of Frieda's hearsay statements was reversible error.

We are not making a finding as to defendant's guilt or innocence. Retrial of defendant, without Frieda's inadmissible hearsay statements, would not constitute double jeopardy. See <u>Johnson</u>, 296 Ill. App. 3d at 66.

CONCLUSION

We find the trial court erred in admitting Frieda's out-of-court statements under the medical diagnosis and treatment exception to the hearsay rule. The error warrants a new trial.

Reversed and remanded.

HOFFMAN, and HALL, JJ., concur.