# Illinois Official Reports

## Appellate Court

<div style="border:1px solid black">

## *People v. Drake*, 2017 IL App (1st) 142882

</div>

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. GERALD DRAKE, Defendant-Appellant. |
| District & No. | First District, Fifth Division<br>Docket No. 1-14-2882 |
| Filed<br>Rehearing denied | December 15, 2017<br>May 24, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, Nos. 08-CR-23372, 11-C6-60174; the Hon. Luciano Panici, Judge, presiding. |
| Judgment | Reversed. |
| Counsel on Appeal | Michael J. Pelletier, Patricia Mysza, and Brett C. Zeeb, of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg, Janet C. Mahoney, and Ashlee Cuza, Assistant State's Attorneys, of counsel), for the People. |
| Panel | JUSTICE HALL delivered the judgment of the court, with opinion.<br>Justice Lampkin concurred in the judgment and opinion.<br>Justice Gordon concurred in part and dissented in part, with opinion. |

**OPINION**

¶ 1    Following a bench trial in the Cook County circuit court, defendant Gerald Drake was convicted of the aggravated battery of his six-year-old stepson, J.H., and sentenced to 20 years in the Illinois Department of Corrections (IDOC). On appeal, defendant contends that (1) the State failed to prove beyond a reasonable doubt that he intentionally immersed J.H. in hot water where no eyewitnesses testified and unrebutted evidence shows that the hot and cold water lines were reversed in the bathtub in which J.H. sustained his burns; (2) the trial court erred in allowing nurse Rosalina Roxas to testify to J.H.'s statement identifying him as the person who poured hot water on him where it was not pertinent to his medical diagnosis and treatment and, therefore, inadmissible under the common-law exception to the hearsay rule; (3) this court should remand for a *Krankel* inquiry where he argued trial counsel's ineffectiveness for failing to put on evidence of J.H.'s mental disability and J.H.'s statement in which he did not implicate defendant, yet the trial court failed to investigate the claims; and (4) his 20-year sentence was excessive, and this court should impose a sentence closer to the minimum or, alternatively, remand for a new sentencing hearing.

¶ 2    For the following reasons, we reverse.

¶ 3                                  BACKGROUND

¶ 4    The State's evidence at trial established that defendant lived with his wife and their nine children, including J.H. While his wife was at work on July 29, 2008, defendant was home taking care of the children, who ranged in age from infancy to 12 years old. While defendant was at home with the children, J.H. sustained second- and third-degree burns on his buttocks, genital region, and both feet up to his ankles.

¶ 5    Retired registered nurse Rosalina Roxas testified on direct examination that she treated J.H. for his burns at John H. Stroger, Jr., Hospital (Stroger Hospital). She testified that on August 8, 2008, when she entered his room, J.H. said "nurse, I'm going to tell you something." J.H. then told her that defendant poured hot water on him while he was in the tub. J.H. indicated that he had not done anything to upset defendant. No one else was in the room. On cross-examination, she again confirmed that J.H. told her that his father poured a cup of hot water on his buttocks while he was in the tub, but she further testified that she never asked how large the cup was nor did she ever see or speak to anyone from J.H.'s family.

¶ 6    The State also presented the expert testimony of Dr. Marjorie Fujara, a specialist in child abuse pediatrics at Stroger Hospital. She examined J.H. on July 30, 2008, and stated that, in her professional opinion, J.H.'s injuries were the result of forcible immersion, indicative of child abuse. She indicated that the injuries were not consistent with water being poured on J.H., contrary to the statement testified to by nurse Roxas. Dr. Fujara also stated that her opinion would not change even if she knew that the hot and cold water knobs had been switched. She further stated that all of J.H.'s siblings were examined and none of them had burns or indications of abuse. Dr. Fujara also never spoke with any of J.H.'s family members.

¶ 7    Finally, retired Illinois Department of Children and Family Services (DCFS) investigator Thomas White, who investigated the case in 2008, testified that he interviewed defendant at the family home on August 3, 2008, and defendant denied that he injured the child. Defendant indicated that on the date of the injuries, his wife, J.H.'s mother, was at work and he was caring

for their eight or nine children at home (White could not recall the exact number because so much time had passed), who ranged in age from infancy to 12 years old. Investigator White concluded that defendant was overwhelmed, although defendant himself never used that word. On the date J.H. sustained his injuries, the baby defecated in his diaper, some of which ended up on the floor, during which time J.H. and another sibling were wrestling and got into the feces on the floor. After seeing them with feces on themselves, defendant told them to go and take a bath. When his wife came home from work that evening, the other kids told her that J.H.'s feet were peeling. Defendant and his wife took J.H. to the hospital, with defendant carrying him inside. Defendant admitted to investigator White that, once they arrived at the hospital, he used the name "Joe Campbell," stated that he was the child's uncle, and made up a story as to the child's location at the time of injury. When investigator White interviewed the other children, he did not observe any signs or symptoms of abuse and they "[s]eemed appropriately adjusted."

¶ 8        On cross-examination, investigator White testified that defendant indicated that he was not angered at the time he sent J.H. to take a bath. Defendant told him that a new water tank was installed by the landlord and that the hot and cold water lines were reversed. White checked the temperature coming out of the spigot when the cold water knob was turned on, and the temperature rose "rapidly" to 161 degrees. When White went to the basement to examine the water tank, he discovered that the hot and cold water pipes had been installed backwards on the new tank.

¶ 9        The defense rested without making a motion for directed finding or presenting any evidence.

¶ 10       The State argued in closing that defendant intentionally held J.H. under hot bath water. Defense counsel argued that J.H. was accidentally burned in the tub while defendant was not present in the bathroom. Additionally, defense counsel argued that the State presented no evidence to support its theories besides the injuries themselves and that no witness, including any of the other children present in the house at the time, testified as to the events of the day.[1]

¶ 11       At the conclusion of the bench trial, the trial court found defendant guilty of aggravated battery, citing two grounds in particular. First, the trial court observed: "There is scientific evidence where a reasonable inference can be made that in fact the defendant, who was the caregiver or caretaker of these eight children while mother was at work, in charge caused these injuries." Second, the trial court found, after considering all the evidence: "It's consciousness of guilt because defendant took off, also the fictitious name that he used when he went to the hospital ***." The trial court's finding referred to the fact that, on November 29, 2011, defendant failed to appear for a court date and a bench warrant was issued for his arrest.[2]

¶ 12       On May 21, 2014, several weeks after trial but prior to sentencing, defendant filed a *pro se* motion titled "Motion-To-Appeal-An-Unfair-Trial," in which he claimed that his trial counsel was ineffective. Defendant filed this *pro se* motion with the clerk of the Appellate Court, First

_____

[1]The incident occurred in July 2008, and the trial occurred in 2014.

[2]On February 28, 2013, defense counsel stated to the trial court that defendant "turned himself in to the police. *** He said that he wanted to get it over with. So, he told them about the warrant." However, the assistant State's Attorney argued during the State's closing at trial that "he didn't turn himself in." Defense counsel objected but was overruled. The State presented no evidence at trial concerning the circumstances of defendant's 2013 arrest.

- 3 -

District, who forwarded it to the circuit court clerk. On June 26, 2014, which was almost a month prior to sentencing, the trial court entered an order that denied defendant's *pro se* motion and treated it instead as an interlocutory notice of appeal.

¶ 13    On July 22, 2014, the trial court denied a posttrial motion for a new trial filed by defendant's counsel. In this posttrial motion, defendant reasserted a claim that the trial court had previously denied, namely, that this case was barred on *res judicata* grounds because in a prior abuse and neglect case filed by the State against defendant and his wife based on the same incident, the State had failed to prove its case by clear and convincing evidence. Defendant also claimed that the evidence was insufficient to prove him guilty of aggravated battery of a child and that the trial court erred by admitting the nurse's statement pursuant to the hearsay exception for medical statements.

¶ 14    After denying the posttrial motion, the trial court sentenced defendant to 22 years in the IDOC. A discussion ensued as to whether the sentence was to be served at 85% or 50%. The trial court then ordered, "22 years IDOC plus three years mandatory supervised release at 50 percent."

¶ 15    After sentencing defendant on the aggravated battery charge, the trial court then proceeded to a sentencing hearing on another outstanding charge. Defendant had previously pleaded guilty to a charge of driving a motor vehicle while his license was suspended or revoked. The trial court sentenced him on this second charge to one year in the custody of the IDOC to be served consecutively to the aggravated battery sentence.

¶ 16    On July 24, 2014, the State filed a "Petition for Relief from Judgment," arguing that defendant's aggravated battery sentence was a void judgment because it had to be served at 85%, not at 50%, as the trial court ordered. At the hearing on the petition on August 6, 2014, the State requested that the trial court resentence defendant. The trial court stated: "I didn't make any specific findings on the record, I don't think, because I didn't write anything down, I just said 22 years." Defense counsel argued that defendant "would have essentially served 11 years" with the IDOC and, thus, the trial court should now sentence defendant to "14 years at 85 percent." The trial court responded, "My sentence was 22 years and I wasn't considering whether or not it was going to be 50 or 85 percent."[3] The court then ruled that it "will re-sentence the defendant to a term of 20 years I.D.O.C. plus 3 years MSR at 85 percent."

¶ 17    On August 8, 2014, defendant again filed his *pro se* motion titled "Motion-To-Appeal-An-Unfair-Trial-Factors-That-My-Attorney-Did-not-Argue-in-Trial-On-Defendant-Behalf." In this motion, defendant claimed that his attorney did not "do a good job" because he failed to argue that the victim had suffered from mental health issues since he was a toddler and had attended "mentally retarded schools all his life." Defendant claimed that all of J.H.'s teachers had stated on school reports that "he thinks slower than normal kids" and that J.H.'s mental issues played a large role in his injuries. Defendant argued that if it took only one or two seconds to become burned at 160 degrees, J.H.'s reaction time is a lot slower than a normal child and that was why it "took him longer than a normal kid *** to get out." Defendant also claimed that his attorney failed to present expert testimony by a plumber about the broken water tank. His attorney also failed to argue that J.H. spoke to a DCFS caseworker, a physician, and a detective and never told any of them that defendant held him in the tub. Defendant

_____

[3]The State concedes in its appellate brief that on July 22, 2014, "the trial court determined that defendant's sentence would be served at 50-percent."

further claimed that his attorney also failed to explain that defendant had a history of using fake names because he had an outstanding warrant for driving with a revoked license. Also, defendant did not want to initially turn himself in because his family had fallen behind on the rent and other bills and he wanted to pay off these bills first.

¶ 18   The trial court docketed this *pro se* motion as a notice of appeal, and no other notice of appeal was filed. This appeal followed.

¶ 19                                              ANALYSIS

¶ 20   As previously stated, defendant makes a number of arguments on appeal. Specifically, he contends that (1) the State failed to prove beyond a reasonable doubt that he intentionally immersed J.H. in hot water, where no eyewitnesses testified and unrebutted evidence shows that the hot and cold water lines were reversed in the bathtub in which J.H. sustained his burns; (2) the trial court erred in allowing nurse Roxas to testify to J.H.'s statement identifying him as the person who poured hot water on him where it was not pertinent to his medical diagnosis and treatment and, therefore, inadmissible under the common-law exception to the hearsay rule; (3) this court should remand for a *Krankel* inquiry where defendant argued trial counsel's ineffectiveness for failing to put on evidence of J.H.'s mental disability and J.H.'s statement in which he did not implicate defendant, yet the trial court failed to investigate the claims; and (4) his 20-year sentence was excessive and this court should impose a sentence closer to the minimum or alternatively, remand for a new sentencing hearing.

¶ 21                                   1. Hearsay Rule Violation

¶ 22   Defendant contends the trial court violated Illinois Rule of Evidence 803(4) (eff. Apr. 26, 2012) when the trial court admitted, as a statement "made for purposes of medical treatment," a hearsay statement by J.H. to nurse Roxas concerning the identity of the alleged perpetrator.

¶ 23   The parties dispute the proper standard of review for this issue. The State argues that this issue should be considered under an abuse of discretion standard, while defendant contends that it is a question of law and should be reviewed *de novo*.

¶ 24   Illinois recognizes the common-law exception to the hearsay rule for statements made by a patient to medical personnel for the purpose of medical diagnosis and treatment. *People v. Oehrke*, 369 Ill. App. 3d 63, 68 (2006); *People v. Gant*, 58 Ill. 2d 178, 186 (1974). The exception covers " 'statements made to a physician concerning the cause or the external source of the condition to be treated.' " (Internal quotation marks omitted.) *People v. Coleman*, 222 Ill. App. 3d 614, 625 (1991) (quoting *Gant*, 58 Ill. 2d at 186). A trial court is vested with discretion to determine whether the statements made by the victim were " 'reasonably pertinent to [the victim's] diagnosis or treatment.' " (Internal quotation marks omitted.) *People v. Davis*, 337 Ill. App. 3d 977, 989-90 (2003) (quoting *People v. Williams*, 223 Ill. App. 3d 692, 700 (1992)). Statements identifying the offender, however, are beyond the scope of the exception. *Oehrke*, 369 Ill. App. 3d at 68; *Davis*, 337 Ill. App. 3d at 990. Accordingly, we will review the trial court's decision for an abuse of discretion.

¶ 25   In the case at bar, we find that the identification statement made by J.H. to nurse Roxas was not made to assist in his medical diagnosis or treatment. The statement was made more than a week after J.H. had been admitted to the hospital, and treatment of his injuries had already commenced. While we are mindful that such statement would be cause for concern to a

- 5 -

medical professional, this court has found that "concern never has been held by any Illinois court to support the medical diagnosis and/or treatment exception to the rule against hearsay." *Oehrke*, 369 Ill. App. 3d at 70. Therefore, we find the common-law exception to the hearsay rule did not apply to the identification portion of J.H.'s statement. The trial court abused its discretion in admitting the statements at trial.

¶ 26    This does not end our review, however. We must now address the question of whether the trial court's admission of J.H.'s statements to nurse Roxas identifying defendant was harmless error. *Oehrke*, 369 Ill. App. 3d at 70-71. The admission of evidence is harmless error if there is no reasonable probability that the verdict would have been different had the hearsay been excluded. *Oehrke*, 369 Ill. App. 3d at 71; *People v. Bridgewater*, 259 Ill. App. 3d 344, 349 (1994). The remedy for the erroneous admission of hearsay is reversal unless the record clearly shows that the error was harmless. *People v. Littleton*, 2014 IL App (1st) 121950, ¶ 65.

¶ 27    Courts consider three factors in determining whether an error was harmless: (1) whether the error contributed to the conviction, (2) whether the other evidence in the case overwhelmingly supported the conviction, and (3) whether the improperly admitted evidence was cumulative or duplicative of the properly admitted evidence. *Littleton*, 2014 IL App (1st) 121950, ¶ 66.

¶ 28    Here, J.H.'s statement to nurse Roxas was the only evidence that placed defendant in the bathroom where the injury occurred. Thus, the statement was not cumulative of any other evidence presented at trial. See *Littleton*, 2014 IL App (1st) 121950, ¶ 65. Additionally, the other evidence of defendant's guilt was not so overwhelming, particularly in light of the facts that the hot and cold water spigots were switched, the cold water spigot released water at a scalding temperature, and none of the medical personnel testified to speaking with any of J.H.'s family members. Since J.H.'s statement to the nurse that defendant was the perpetrator was the foundation of the State's case, we cannot see how the erroneous admission of his hearsay statement was harmless error.

¶ 29    Based on the record, we cannot say that " 'the properly admitted evidence was so overwhelming, without the erroneously admitted hearsay statements, that no fair-minded trier of fact could reasonably have acquitted the defendant.' " *Oehrke*, 369 Ill. App. 3d at 71 (quoting *Bridgewater*, 259 Ill. App. 3d at 349). We find the trial court's admission and use of J.H.'s hearsay statements was reversible error.

¶ 30                                    2. Sufficiency of the Evidence

¶ 31    A finding that the erroneous admission of hearsay evidence was reversible error does not end our inquiry, however, as defendant also challenges the sufficiency of the evidence. Specifically, defendant contends that the State failed to prove beyond a reasonable doubt that he intentionally immersed J.H. in hot water where no eyewitnesses testified and the unrebutted evidence shows that the hot and cold water lines were reversed in the bathtub in which J.H. sustained his burns.

¶ 32    In this case, because the trial court committed reversible error in admitting hearsay evidence as previously determined, the remedy would ordinarily be a remand for a new trial. See *Littleton*, 2014 IL App (1st) 121950, ¶ 65. However, in this case, because defendant has challenged the sufficiency of the evidence, double jeopardy is triggered, and we must consider whether we may remand for a new trial. See *People v. Hernandez*, 2017 IL App (1st) 150575, ¶¶ 134-36.

¶ 33    The double jeopardy clause provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const., amends. V, XIV. The Illinois Constitution (Ill. Const. 1970, art. I, § 10) and Illinois statute (720 ILCS 5/3-4(a) (West 2012)) provide similar guarantees. *People v. Bellmyer*, 199 Ill. 2d 529, 536-37 (2002); *Hernandez*, 2017 IL App (1st) 150575, ¶ 135.

¶ 34    When the double jeopardy clause applies, a reviewing court must examine the sufficiency of the evidence prior to a remand for a new trial. *Hernandez*, 2017 IL App (1st) 150575, ¶ 136.

¶ 35    When reviewing a challenge to the sufficiency of the evidence, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Sutherland*, 155 Ill. 2d 1, 17 (1992); *People v. Brown*, 2017 IL App (1st) 142877, ¶ 39. To prove the offense of aggravated battery, the State was required to show that defendant intentionally or knowingly caused great bodily harm or permanent disability while committing a battery. 720 ILCS 5/12-4(a) (West 2008). Additionally, we may consider all the evidence at the first trial, including any improperly admitted evidence, when making this determination. See *Hernandez*, 2017 IL App (1st) 150575, ¶ 141; *Oehrke*, 369 Ill. App. 3d at 71; *People v. Johnson*, 296 Ill. App. 3d 53, 66 (1998).

¶ 36    Here, the State presented evidence that J.H. sustained second- and third-degree burns on his buttocks, genital region, and both feet up to his ankles. Nurse Roxas testified on direct examination that on August 8, 2008, J.H. told her that defendant poured hot water on him while he was in the tub. On cross-examination, she testified that she never asked for any details nor did she ever see or speak to anyone from J.H.'s family.

¶ 37    The State also presented the expert testimony of Dr. Fujara, who examined J.H. on July 30, 2008, and stated that, in her professional opinion, J.H.'s injuries were the result of forcible immersion, indicative of child abuse. She indicated that the injuries were not consistent with water being poured on J.H., contrary to the statement testified to by nurse Roxas. Dr. Fujara also never spoke with any of J.H.'s family members.

¶ 38    Additionally, retired DCFS investigator White testified that he interviewed defendant at the family home on August 3, 2008, and defendant denied that he injured the child. Defendant indicated that on the date of the injuries, his wife, J.H.'s mother, was at work and he was caring for all of the children at home, who ranged in age from infancy to 12 years old. On the date J.H. sustained his injuries, the baby defecated in his diaper, some of which ended up on the floor, during which time J.H. and another sibling were wrestling and got into the feces on the floor. After seeing them with feces on themselves, defendant told them to go and take a bath. When his wife came home from work that evening, the other kids told her that J.H.'s feet were peeling. Defendant and his wife took J.H. to the hospital, with defendant carrying him inside. Defendant admitted to investigator White that, once they arrived at the hospital, he used the name "Joe Campbell," stated that he was the child's uncle, and made up a story as to the child's location at the time of injury.

¶ 39    On cross-examination, investigator White testified that defendant indicated that he was not angered at the time he sent J.H. to take a bath. Defendant told him that there had been a new water tank installed by the landlord and that the hot and cold water lines were reversed. Investigator White verified that the hot water tank's pipes were reversed, and he also learned that the water coming from the tank was 160 degrees as measured by his thermometer.

¶ 40    As previously stated, J.H.'s erroneously admitted hearsay statement was the only piece of evidence placing defendant in the bathroom where the injury occurred. The State provided no other identification evidence, and it is undisputed that there were other people present in the house.

¶ 41    Viewing all of the evidence presented at the trial in the light most favorable to the State, we conclude that the State failed to prove defendant guilty of the essential elements of aggravated battery beyond a reasonable doubt. The double jeopardy clause forbids a second or successive trial for the purpose of affording the prosecution another opportunity to supply evidence it failed to muster in the first proceeding. *People v. Olivera*, 164 Ill. 2d 382, 393 (1995) (citing *Burks v. United States*, 437 U.S. 1, 11 (1978)). As such, defendant's conviction is reversed.

¶ 42                          3. Defendant's Other Claims of Error

¶ 43    Since we are reversing defendant's conviction, we do not need to reach defendant's claims concerning a *Krankel* inquiry or sentencing error.

¶ 44                                  CONCLUSION

¶ 45    For the foregoing reasons, the judgment of the circuit court of Cook County is reversed.

¶ 46    Reversed.

¶ 47    JUSTICE GORDON, concurring in part and dissenting in part:

¶ 48    For the following reasons, I concur with the majority's finding that defendant's conviction must be reversed but dissent from the majority's finding that double jeopardy bars a retrial. Thus, I would reverse and remand for further proceedings. In addition, I write separately to discuss arguments and case law not addressed by the majority.

¶ 49    I concur with the majority's finding that the trial court erred in allowing a nurse to testify about J.H.'s statement identifying defendant as the person who poured hot water on him, where it was not pertinent to J.H.'s medical diagnosis and treatment and, therefore, was not admissible under the medical diagnosis and/or treatment exception to the hearsay rule. Ill. R. Evid. 803(4) (eff. Apr. 26, 2012). I agree that the alleged identity of the perpetrator cannot be considered a statement made for the purposes of medical treatment in this particular case.

¶ 50    However, I must write separately on this issue because (1) I disagree with the standard of review applied by the majority and (2) we need to address an argument raised by the State and overlooked by the majority.

¶ 51    While there is no dispute between the parties that the issue was preserved for our review, the State and defendant do dispute the proper standard of review. The State argues, and the majority agrees, that we should apply an abuse-of-discretion standard of review, which normally applies to evidentiary questions. By contrast, defendant argues, and I agree, that whether the hearsay exception applies to the alleged identity of the perpetrator is solely a question of law, which we should review *de novo*.

¶ 52    While evidentiary rulings are generally within the sound discretion of the trial court, *de novo* review applies to an evidentiary question if that question concerns how to correctly interpret a " 'rule of law.' " *People v. Caffey*, 205 Ill. 2d 52, 89 (2001) (quoting *People v. Williams*, 188 Ill. 2d 365, 369 (1999)). An abuse of discretion occurs only where the trial

court's ruling is arbitrary, fanciful, or unreasonable or where no reasonable person would take the view adopted by the trial court. *People v. Patrick*, 233 Ill. 2d 62, 68 (2009). By contrast, *de novo* consideration means that we perform the same analysis that a trial judge would perform. *People v. Schlosser*, 2017 IL App (1st) 150355, ¶ 28.

¶ 53    The question of whether the hearsay exception includes the alleged identity of the perpetrator is solely a question of law, to which we apply *de novo* review. This court previously considered this issue and found that, while a trial court is vested with discretion in determining whether statements made by a victim were reasonably pertinent to the victim's diagnosis or treatment, any statements identifying the offender were "beyond the scope" of the trial court's discretion. *Oehrke*, 369 Ill. App. 3d at 68. "[W]here the credibility of the witnesses is not at issue, no relevant facts are in dispute, and the court's ruling is not related in any way to a balancing of [probative value] versus prejudice—in other words, when the considerations on which we typically defer to the trial court are not present—and the only issue for the reviewing court is the correctness of the trial court's legal interpretation, *de novo* review is appropriate." *People v. Risper*, 2015 IL App (1st) 130993, ¶ 33; see also *People v. Aguilar*, 265 Ill. App. 3d 105, 109 (1994) (*de novo* review applied to a trial court's evidentiary ruling where the case "involve[d] a legal issue and did not require the trial court to use its discretion regarding fact-finding or assessing the credibility of witnesses" (cited with approval in *Caffey*, 205 Ill. 2d at 89)).

¶ 54    The question before us is solely whether the alleged identity of a perpetrator can be considered a statement made for purposes of medical treatment, which is purely a legal question. In the statement at issue, a nurse testified that J.H. told her that "his dad was the one who poured hot water on his buttocks while he was in the tub." However, the admission of most of this statement is not at issue. Defendant does not contest the nurse's ability to testify that hot water was poured on J.H.'s buttocks while in the tub. *E.g.*, *People v. Spicer*, 379 Ill. App. 3d 441, 447, 451 (2007) (a victim's statement to an emergency room doctor about the incident, namely, that she had been " 'tied and raped,' " was admissible pursuant to the hearsay exception for medical diagnosis). The issue is only whether the nurse should have been allowed to testify as to the alleged identity of the perpetrator.

¶ 55    In support of its argument that we should apply an abuse-of-discretion standard of review to this question, the State cites only one case: *In re Jovan A.*, 2014 IL App (1st) 103835. In *Jovan A.*, the question was whether a police officer's testimony about the content of an online advertisement was properly admitted to show the course of the officer's investigation. *Jovan A.*, 2014 IL App (1st) 103835, ¶ 34. This court applied an abuse-of-discretion standard of review (*Jovan A.*, 2014 IL App (1st) 103835, ¶ 20) and found that the trial court erred by admitting the advertisement's content (*Jovan A.*, 2014 IL App (1st) 103835, ¶ 35). By contrast, the issue in the case at bar requires us to interpret the proper scope of a rule of evidence, namely, Illinois Rule of Evidence 803(4) (eff. Apr. 26, 2012). *Schlosser*, 2017 IL App (1st) 150355, ¶ 28 (issues of statutory interpretation are reviewed *de novo*). Thus, *de novo* review applies.

¶ 56    Next, we need to address an argument raised by the State and overlooked by the majority. The State argues that the outcome of this case is dictated by the Illinois Supreme Court's opinion in *People v. Falaster*, 173 Ill. 2d 220, 230 (1996), in which our supreme court found that a child victim's statements made to a nurse during a diagnostic examination fit within the scope of this hearsay exception.

¶ 57    While there is a general bar to admitting statements of identification as statements made for the purposes of medical diagnosis or treatment,[4] our supreme court in *Falaster*, 173 Ill. 2d at 230, carved out a limited exception to this bar for a child victim's identification of a family member in cases of sexual abuse. The supreme court explained that "a victim's identification of a family member as the offender is closely related to the victim's diagnosis and treatment in cases involving allegations of sexual abuse." *Falaster*, 173 Ill. 2d at 230; see also *People v. Morgan*, 259 Ill. App. 3d 770, 781 (1994) (a child's statement to doctors identifying his stepfather "as the person who sexually abused him was reasonably pertinent to diagnosis and treatment"). In essence, the State in the case at bar asks us to extend *Falaster* to cases not involving sexual abuse, but the State does not cite a single case in the 20 years since *Falaster* was decided that has done so. *Oehrke*, 369 Ill. App. 3d at 70 ("In *Falaster* and *Morgan*, the courts recognized intrafamily sexual abuse of a child creates unique psychological harm that requires special treatment."); see also *People v. Stull*, 2014 IL App (4th) 120704, ¶¶ 75-81 (the appellate court discussed *Falaster* to find no error in admitting a six-year-old child's statement to a doctor identifying her father as the person who had sexually assaulted her); *People v. Simpkins*, 297 Ill. App. 3d 668, 679-80 (1998) (discussing *Falaster* as precedent in a case of alleged criminal sexual assault by defendant of his five-year-old daughter). Thus, I would expressly decline the State's invitation to extend *Falaster*'s holding. See *Oehrke*, 369 Ill. App. 3d at 70 ("We decline to broaden the terms of the medical diagnosis and treatment exception by judicial fiat, 'lest the exception swallow a rule that has served so well for so long.' [Citation.]").

¶ 58    I do concur with the majority's finding that this error was not harmless. *People v. Thompson*, 238 Ill. 2d 598, 611 (2010) (when a defendant has preserved an issue for appellate review, the reviewing court will conduct a harmless error analysis). J.H.'s statement to the nurse was the only evidence placing defendant in the bathroom where the injury occurred. Thus, the statement was material and not cumulative of any other evidence in the record, and I

---

[4]See *Oehrke*, 369 Ill. App. 3d at 68; *People v. Davis*, 337 Ill. App. 3d 977, 990 (2003) ("identification of the offender is outside the scope of the exception"); *People v. Cassell*, 283 Ill. App. 3d 112, 125 (1996) ("the part of C.G.'s statement referring to her ex-boyfriend as the perpetrator was not admissible under this exception since the identity of the person who attacked her was not necessary to her receiving proper medical treatment"); *People v. Hall*, 235 Ill. App. 3d 418, 435 (1992) ("Although medical personnel may testify as to statements made by a sexual assault victim to medical diagnosis or treatment, they may not identify the alleged perpetrator."); *People v. Perkins*, 216 Ill. App. 3d 389, 397-98 (1991) ("While there is no question that Margaret's statement that she had been sexually assaulted was admissible as a 'statement[ ] pertinent to medical diagnosis and treatment' [citations], that part of her statement identifying Perkins as the perpetrator was not admissible under this exception to the hearsay rule."); *People v. Hudson*, 198 Ill. App. 3d 915, 922 (1990) ("identification of the offender is outside the scope of this hearsay exception"); *People v. Sommerville*, 193 Ill. App. 3d 161, 175-76 (1990) (the victim's description of "the perpetrator as 'a black man' " was "a statement which should have been excluded as descriptive testimony unnecessary for medical diagnosis and treatment"); *People v. Taylor*, 153 Ill. App. 3d 710, 721 (1987) ("We are unaware of any criminal case where a physician has been permitted, under the physician-patient exception to the hearsay rule, to repeat a statement made by the patient identifying the assailant."); *cf. Spicer*, 379 Ill. App. 3d at 447, 451 (an adult victim's statement to an emergency room doctor about *how* the incident occurred, namely, that she had been " 'tied and raped,' " was admissible pursuant to the hearsay exception for medical diagnosis).

agree that we must reverse defendant's conviction. See *Caffey*, 205 Ill. 2d at 92 ("[e]rror in the exclusion of hearsay testimony is harmless where the excluded evidence is merely cumulative"); *People v. Sims*, 192 Ill. 2d 592, 629 (2000) (admission of hearsay testimony was harmless where "the evidence of defendant's guilt was overwhelming").

¶ 59    However, I find that a retrial of defendant does not violate the bar against double jeopardy. See *Oehrke*, 369 Ill. App. 3d at 71; *People v. Johnson*, 296 Ill. App. 3d 53, 66 (1998). In reaching its conclusion, the majority overlooks the significance of evidence that the trial court specifically mentioned was pivotal to its own verdict in this bench trial. The trial court observed (1) that it was defendant who was "the caregiver or caretaker of these eight children while [the] mother was at work" and (2) that defendant exhibited "consciousness of guilt" (a) when he used "fictitious names *** when he went to the hospital" with the victim on the night of the offense and (b) when defendant "took off" for over a year prior to the trial in this case.

¶ 60    In addition, the majority minimizes the significance of the excluded evidence in its double jeopardy analysis. On the one hand, the majority agrees that this evidence is so compelling that its admission, by itself, is enough to reverse. On the other hand, the majority downplays this evidence of guilt in its double jeopardy analysis. Our supreme court has held: "If the evidence presented at the first trial, *including the improperly admitted evidence*, would have been sufficient for any rational trier of fact to find the essential elements of the crime proven beyond a reasonable doubt, retrial is the proper remedy." (Emphasis added.) *People v. McKown*, 236 Ill. 2d 278, 311 (2010). Thus, we are required to consider the victim's statement that it was defendant who was in the room with the victim when the injury occurred. For all the reasons that we found this statement to be far from harmless, I believe that we must also find it material to a double jeopardy analysis. In a double jeopardy analysis, we review *all* the evidence presented at the first trial and then determine whether "any rational trier of fact" could have found defendant guilty. *McKown*, 236 Ill. 2d at 311. In sum, after considering the reasons that the trial judge specifically gave for his verdict and the highly material and now excluded identification evidence, as well as all the other evidence at trial, I find that this trial judge was not irrational. *People v. Williams*, 2013 IL App (1st) 111116, ¶ 102 (after a bench trial, we presume that the trial court considered all the evidence). Thus, I would remand for a new trial without the identification portion of J.H.'s hearsay statement in evidence.

¶ 61    Since I would remand for a new trial and the trial court may permit the same attorney to represent defendant, I believe we must address defendant's *Krankel* claim, which the majority does not discuss. While I recognize the advantages of permitting the same counsel who is already thoroughly familiar with the case to continue with it, I would hold the trial court must first conduct a *Krankel* inquiry, for the reasons and in the manner set forth by our supreme court in *People v. Ayres*, 2017 IL 120071, ¶¶ 9, 15, 20-22 (a defendant's allegation of ineffective assistance of counsel even without any factual support is sufficient to trigger a *Krankel* inquiry, and a remand is necessary to allow the trial court and defendant "an opportunity to flesh out his claim").

¶ 62    On this appeal, defendant asked this court to remand for a *Krankel* inquiry, on the ground that he had filed a *pro se* posttrial motion that argued that his trial counsel was ineffective for failing to introduce (1) evidence of J.H.'s mental disability and (2) statements by J.H. in which he did not implicate defendant. There is no dispute among the parties that the trial court failed

to investigate defendant's claims and failed to conduct any inquiry. Thus, I would remand for a *Krankel* inquiry, to be conducted before any further proceedings.

¶ 63　　　For the foregoing reasons, I concur only with the finding that defendant's conviction must be reversed. However, I must dissent because I find that double jeopardy poses no bar to a retrial. Thus, I would remand for further proceedings including, first, a *Krankel* inquiry.