# Illinois Official Reports

## Supreme Court

***People v. Drake*, 2019 IL 123734**

| | |
|---|---|
| Caption in Supreme Court: | THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. GERALD DRAKE, Appellee. |
| Docket No. | 123734 |
| Filed | March 21, 2019 |
| Decision Under Review | Appeal from the Appellate Court for the First District; heard in that court on appeal from the Circuit Court of Cook County, the Hon. Luciano Panici, Judge, presiding. |
| Judgment | Appellate court judgment affirmed in part and reversed in part. Circuit court judgment reversed. Cause remanded. |
| Counsel on Appeal | Lisa Madigan, Attorney General, of Springfield (David L. Franklin, Solicitor General, and Michael M. Glick and Erin M. O'Connell, Assistant Attorneys General, of Chicago, of counsel), for the People.<br><br>James E. Chadd, State Appellate Defender, Patricia Mysza, Deputy Defender, and Brett C. Zeeb, Assistant Appellate Defender, of the Office of the State Appellate Defender, of Chicago, for appellee. |

Justices            JUSTICE KILBRIDE delivered the judgment of the court, with opinion.

Chief Justice Karmeier and Justices Thomas, Garman, Burke, Theis, and Neville concurred in the judgment and opinion.

**OPINION**

¶ 1       Defendant, Gerald Drake, was convicted of aggravated battery following a bench trial in the circuit court of Cook County. The appellate court reversed his conviction and held that retrial was barred by the double jeopardy clause. Based on the facts of this case, we hold that the double jeopardy clause does not bar retrial of defendant. Accordingly, we reverse in part the appellate court's judgment and remand to the trial court for a new trial.

¶ 2                          I. BACKGROUND

¶ 3       Defendant was charged by indictment with aggravated battery of a child (720 ILCS 5/12-4.3(a) (West 2008)), heinous battery (720 ILCS 5/12-4.1(a) (West 2008)), and aggravated domestic battery (720 ILCS 5/12-3.3(a) (West 2008)). The indictments alleged that defendant caused great bodily harm to his six-year-old stepson, J.H., by immersing him in hot water.

¶ 4       Prior to trial, the State filed a motion seeking to admit J.H.'s out-of-court statement to Rosalina Roxas, his nurse at John H. Stroger Jr. Hospital (Stroger Hospital). In that statement, J.H. claimed that defendant caused his injuries by pouring a cup of hot water on him. The trial court ruled that J.H.'s statement was admissible under the hearsay exception for statements made for purposes of medical diagnosis or treatment. See Ill. R. Evid. 803(4) (eff. Apr. 26, 2012).

¶ 5       At defendant's bench trial, Roxas testified that, as a registered nurse, she treated J.H. in the pediatric intensive care unit at Stroger Hospital for burns to his buttocks, genital area, and legs. When Roxas entered his room one day, J.H. called to her and stated he was going to tell her something. J.H. then revealed that defendant poured hot water on him while he was in the bathtub. When Roxas asked if J.H. had done anything to upset defendant, J.H. replied that he had done nothing. Prior to that conversation, J.H. had not disclosed the cause of his injuries but "just started crying if [anyone tried] to ask him anything about the incident." On cross-examination, Roxas confirmed that J.H. stated defendant poured a cup of hot water on him and that she did not ask J.H. about the size of the cup.

¶ 6       The State also offered expert testimony from Dr. Marjorie Fujara, a specialist in child abuse pediatrics at Stroger Hospital. J.H. was admitted with burns covering 13% of his body. J.H. had third-degree burns through the full thickness of his skin on the tops of his feet up to his ankles and second-degree burns on the soles of his feet, buttocks, and genital area. Full thickness burns often require skin grafting because the tissue is damaged beyond recovery. Dr. Fujara stated the burn pattern was "very distinctive" with a clear line between the burned and healthy skin. The burns ended at J.H.'s ankles with no splash marks extending upward onto his legs. She opined that the burns resulted from forcible immersion in hot water, explaining that the soles of J.H.'s feet and his buttocks were burned less severely because they were in contact

with the cooler surface of the bathtub. Dr. Fujara stated splash marks would be expected if J.H. had been moving around in the bathtub. Based on the specific burn pattern, Dr. Fujara ruled out alternative causes, observing that if J.H. had stepped into a bathtub filled with hot water he would have "reflexively" withdrawn his foot and he would not have suffered burns to both feet and his buttocks. Alternatively, if J.H. had been sitting in the bathtub when the hot water was turned on, he would have flailed around when the water contacted his skin, resulting in splash marks.

¶ 7    On cross-examination, Dr. Fujara stated she was aware that the hot and cold water lines had been reversed and the hot water was measured at 160 degrees. That information, however, did not alter her opinion that J.H.'s burns resulted from forced immersion. Dr. Fujara also acknowledged that J.H.'s siblings were examined and did not demonstrate any indication of abuse.

¶ 8    Thomas White, a retired investigator with the Department of Children and Family Services (DCFS), testified that defendant stated his wife, J.H.'s mother, was at work when the injury occurred. Defendant was at home caring for their children. White's memory was "a little foggy" on how many children defendant stated he was caring for, but it was either eight or nine, and they ranged in age from infancy to 12 years old. Defendant acknowledged he felt "a little overwhelmed." At some point that morning, J.H. and his brother were wrestling and fell into feces that had leaked from the baby's diaper onto the floor. Defendant told them to go take a bath.

¶ 9    White further testified that defendant did not explain how he became aware of J.H.'s injuries. During his investigation, however, White learned that two of the other children told their mother that J.H.'s feet were peeling after she came home from work between 10:30 and 11:30 that night. Defendant and J.H.'s mother then immediately took J.H. to the hospital. Defendant acknowledged that he falsely identified himself as "Joe Campbell" at the hospital. He also stated he was J.H.'s uncle and falsely claimed that J.H. was with a babysitter prior to arriving at the hospital.

¶ 10    On cross-examination, White testified that defendant stated he was not angry when he sent J.H. to take a bath. Defendant informed White that a new water heater had been installed a couple of days before the incident. White turned the cold water knob in the bathtub and observed the water temperature rise rapidly to 161 degrees. White noted the water temperature normally should not exceed 119 degrees. He then went to the basement and determined that the hot and cold water lines had been reversed when installed on the new water heater. White did not observe any signs of abuse in the other children and stated they "[s]eemed appropriately adjusted."

¶ 11    Based on the evidence, the trial court found defendant guilty of the charged offenses. The trial judge emphasized that the unrebutted expert testimony established that J.H.'s injuries resulted from forcible immersion, defendant was the sole caregiver present when the injuries occurred, and defendant exhibited consciousness of guilt by giving false information at the hospital.

¶ 12    Defendant subsequently elected to be sentenced under the amended aggravated battery statute. See 720 ILCS 5/12-3.05(a)(2), (b)(1) (West 2014). The trial court merged the remaining counts into the aggravated battery conviction and sentenced defendant to 20 years' imprisonment for that offense.

¶ 13    On appeal, defendant contended, in pertinent part, that Rosalina Roxas's testimony recounting J.H.'s out-of-court statement was inadmissible hearsay and that the State failed to prove the charged offenses beyond a reasonable doubt. 2017 IL App (1st) 142882, ¶ 20. The appellate court held that the trial court erred in admitting J.H.'s statement identifying defendant as the offender under the hearsay exception for statements made for the purpose of medical diagnosis and treatment. The appellate court concluded the hearsay statement was not made for that purpose and admission of the statement could not be considered harmless error. 2017 IL App (1st) 142882, ¶¶ 24-29.

¶ 14    The appellate court further held that the double jeopardy clause barred retrial because the evidence presented by the State was insufficient to prove defendant guilty of the offenses beyond a reasonable doubt. 2017 IL App (1st) 142882, ¶¶ 30-41. The appellate court reasoned that J.H.'s hearsay statement was the only identification evidence placing defendant in the bathroom when the injury occurred and the evidence showed that other people were in the house when J.H. was injured. 2017 IL App (1st) 142882, ¶ 40. Defendant's conviction was, therefore, reversed. 2017 IL App (1st) 142882, ¶ 41.

¶ 15    Justice Gordon dissented from the portion of the majority's opinion holding that the double jeopardy clause barred retrial. 2017 IL App (1st) 142882, ¶ 48 (Gordon, J., concurring in part and dissenting in part). The partial dissent maintained that the majority failed to consider the excluded hearsay statement properly in its analysis of that issue. 2017 IL App (1st) 142882, ¶ 60 (Gordon, J., concurring in part and dissenting in part). The partial dissent concluded that this matter should be remanded for a new trial because the evidence presented at trial, including J.H.'s hearsay statement, was sufficient for a rational trier of fact to find defendant guilty beyond a reasonable doubt. 2017 IL App (1st) 142882, ¶ 60 (Gordon, J., concurring in part and dissenting in part).

¶ 16    We allowed the State's petition for leave to appeal (Ill. S. Ct. R. 315 (eff. July 1, 2018)).

¶ 17                        II. ANALYSIS

¶ 18    On appeal to this court, the State does not dispute the appellate court's holding that admission of J.H.'s out-of-court statement was reversible error. Rather, the State only argues that the appellate court erred in concluding retrial is barred by the double jeopardy clause. The State contends the evidence submitted at trial, including J.H.'s hearsay statement, was sufficient for a rational trier of fact to find defendant guilty beyond a reasonable doubt. According to the State, the appellate court failed to give adequate weight to J.H.'s out-of-court statement identifying defendant as the offender in its double jeopardy analysis.

¶ 19    Defendant responds that the appellate court considered all of the evidence presented in this case, including J.H.'s statement, and correctly held it was insufficient to prove defendant guilty of aggravated battery beyond a reasonable doubt. J.H.'s hearsay statement that defendant poured hot water on him was the only evidence that defendant was even present in the bathroom, but the statement is inconsistent with Dr. Fujara's opinion that the burns could have resulted only from forcible immersion. Additionally, the evidence showed the hot and cold water lines were reversed, and the hot water temperature was 160 degrees, indicating the burns could have been caused accidentally. Defendant, therefore, concludes that this court should affirm the appellate court's judgment.

¶ 20    The applicable law is well established. The double jeopardy clause prohibits a second, or successive, trial to afford the prosecution another opportunity to provide evidence that it failed to present at the first trial. *People v. Lopez*, 229 Ill. 2d 322, 367 (2008) (citing *Burks v. United States*, 437 U.S. 1, 11 (1978)). The double jeopardy clause does not preclude retrial when a conviction has been overturned because of an error in the trial proceedings, but retrial is barred if the evidence introduced at the initial trial was insufficient to sustain the conviction. *Lopez*, 229 Ill. 2d at 367 (citing *People v. Mink*, 141 Ill. 2d 163, 173-74 (1990)). "[F]or purposes of double jeopardy all evidence submitted at the original trial may be considered when determining the sufficiency of the evidence." *People v. Olivera*, 164 Ill. 2d 382, 393 (1995) (citing *Lockhart v. Nelson*, 488 U.S. 33, 40 (1988)).

¶ 21    Retrial is the proper remedy if the evidence presented at the initial trial, including any improperly admitted evidence, was sufficient to sustain the conviction. *People v. McKown*, 236 Ill. 2d 278, 311 (2010) (citing *Lopez*, 229 Ill. 2d at 367). In determining the sufficiency of the evidence, a reviewing court must consider whether " ' "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." ' " (Emphasis in original.) *People v. Ross*, 229 Ill. 2d 255, 272 (2008) (quoting *People v. Collins*, 106 Ill. 2d 237, 261 (1985), quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

¶ 22    In this case, a rational trier of fact could have credited Dr. Fujara's testimony that J.H.'s burns resulted from forcible immersion in hot water. Indeed, Dr. Fujara provided the only expert testimony explaining J.H.'s burns.

¶ 23    Defendant contends, however, that Dr. Fujara acknowledged on cross-examination that the burns on J.H.'s buttocks did not exhibit the "doughnut pattern" characteristic in forcible immersion cases. Defendant quotes an article from the United States Department of Justice entitled *Burn Injuries in Child Abuse*, as explaining that "[w]hen a child is held in scalding hot bathwater, the buttocks are pressed against the bottom of the tub so forcibly that the water will not come into contact with the center of the buttocks, sparing this part of the buttocks and causing the burn injury to have a doughnut pattern." Office of Juvenile Justice and Delinquency Prevention, U.S. Department of Justice, *Burn Injuries in Child Abuse*, at 6 (2d ed. June 2001), https://www.ncjrs.gov/pdffiles/91190-6.pdf [https://perma.cc/Q97P-6LCD]. According to defendant, Dr. Fujara testified on cross-examination that J.H. did not have that type of burn, thus undermining her opinion that the burns resulted from forcible immersion. Defendant posits that J.H. could have been burned accidentally because the water lines were reversed and the water coming from the hot water tank was 160 degrees.

¶ 24    A review of the record, however, shows Dr. Fujara actually testified that J.H.'s burns exhibited a doughnut pattern. When defense counsel questioned whether a picture of J.H.'s buttocks "demonstrate[d] that kind of pattern," Dr. Fujara responded "I think it does." Dr. Fujara explained that "probably because the water was so hot there is no absolute sparing," but she noted that "the area where he actually is sitting on the porcelain is less burned, so I do—I believe if the water temperature weren't as high, we might see that doughnut pattern of the slight sparing in the center." Dr. Fujara also noted that a doughnut pattern is only "commonly" or "sometimes" seen when the burns result from forcible immersion.

¶ 25    In this case, Dr. Fujara offered persuasive expert testimony that J.H.'s burns resulted from forcible immersion in hot water. Dr. Fujara's testimony ruling out alternative causes rebuts

defendant's argument that J.H. may have been burned accidentally as a result of the faulty water heater installation. We conclude that the trial court reasonably credited Dr. Fujara's testimony that J.H.'s injuries resulted from forcible immersion.

¶ 26 The critical issue, therefore, becomes whether the evidence was sufficient to conclude beyond a reasonable doubt that defendant was the offender. The evidence showed defendant was the only adult present in the house at the time J.H. was injured. He did not seek prompt treatment for the severe injuries suffered by J.H. Rather, J.H. was taken to the hospital for treatment only after the other children informed their mother that J.H.'s feet were peeling. The injuries apparently occurred when J.H. took a bath at some point in the morning, and J.H.'s mother did not return home from work until late that night. When defendant and J.H.'s mother finally took J.H. to the hospital, defendant gave an incorrect name, falsely stated he was J.H.'s uncle, and told hospital staff that J.H. was with a babysitter prior to arriving at the hospital. The trial court may have viewed each of those statements as evidence of consciousness of guilt. See *People v. Harris*, 225 Ill. 2d 1, 26-27 (2007) (use of false identification may be admitted as evidence of consciousness of guilt); *People v. Milka*, 211 Ill. 2d 150, 181 (2004) (a false exculpatory statement is probative of consciousness of guilt). Accordingly, substantial evidence pointed to defendant as the offender even without the excluded hearsay statement.

¶ 27 Finally, although the appellate court mentioned the excluded hearsay statement in its analysis, we do not believe that statement was given the proper weight. Before concluding that the evidence was insufficient to prove defendant guilty beyond a reasonable doubt, the appellate court observed that "J.H.'s erroneously admitted hearsay statement was the only piece of evidence placing defendant in the bathroom where the injury occurred" and "[t]he State provided no other identification evidence." 2017 IL App (1st) 142882, ¶ 40. Defendant similarly argues that the State did not present any live witness testimony showing defendant was even present in the bathroom when J.H. was injured. The State was not necessarily required to provide other evidence on that point, however. As previously noted, a reviewing court must consider evidence admitted improperly when determining the sufficiency of the evidence. *Olivera*, 164 Ill. 2d at 393 (citing *Lockhart*, 488 U.S. at 40). The excluded hearsay statement is, therefore, competent evidence that defendant caused J.H.'s injuries for the purpose of the sufficiency of the evidence analysis.

¶ 28 Further, all of the evidence, including J.H.'s hearsay statement, must be viewed in the light most favorable to the prosecution. Given that standard, we believe a rational trier of fact could have considered J.H.'s hearsay statement simply as an identification of the person who caused his injuries. The trial judge was not required to parse six-year-old J.H.'s statement in a technical manner. As a six-year-old, J.H. may not have been able to explain the precise way defendant harmed him. Nonetheless, we do not believe a rational trier of fact is required to completely discount the part of J.H.'s statement identifying defendant as the person who caused his injuries merely because part of his statement is not perfectly consistent with the expert's testimony.

¶ 29 In sum, our decision in this case is guided by the standard for reviewing this issue. We must determine whether " ' "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." ' " (Emphasis in original.) *Ross*, 229 Ill. 2d at 272 (quoting *Collins*, 106 Ill. 2d at 261, quoting *Jackson*, 443 U.S. at 319). We believe the evidence, including J.H.'s hearsay statement identifying defendant as the person who caused his injuries,

was sufficient when viewed in the light most favorable to the prosecution for a rational trier of fact to find defendant guilty beyond a reasonable doubt. Accordingly, the double jeopardy clause does not bar retrial, and this case must be remanded to the circuit court for retrial without the excluded hearsay evidence.

¶ 30                                          III. CONCLUSION
¶ 31        For the above reasons, we reverse the portion of the appellate court's judgment barring retrial of defendant for the charged offenses. We remand to the circuit court for a new trial.

¶ 32        Appellate court judgment affirmed in part and reversed in part.
¶ 33        Circuit court judgment reversed.
¶ 34        Cause remanded.