NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2021 IL App (4th) 190676-U

NO. 4-19-0676

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
September 8, 2021
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | McLean County |
| JESTIN M. COVINGTON, | ) | No. 18CM1366 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Scott Kording, |
| | ) | Judge Presiding. |

JUSTICE HOLDER WHITE delivered the judgment of the court.
Justices DeArmond and Steigmann concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The appellate court reversed and remanded with directions, concluding the trial court erred where it allowed the State to admit into evidence a 911 recording that contained testimonial hearsay in violation of defendant's sixth amendment right to confrontation, and the evidence was closely balanced resulting in plain error.

¶ 2    Following a May 2019 trial, a jury found defendant, Jestin M. Covington, guilty of criminal damage to property (720 ILCS 5/21-1(a)(1) (West 2018)), where defendant "knowingly damaged property of Jason Andr[i]s" when he kicked in the back door to his girlfriend's, Marilyn Brown, apartment, without the owner's—Andris's—consent.  In August 2019, the trial court sentenced defendant to 24 months' conditional discharge, 90 days in the McLean County jail (stayed), and 30 hours of community service.

¶ 3    Defendant appeals, arguing the trial court erred when it admitted into evidence testimonial hearsay statements on the 911 recording that identified defendant as the perpetrator

of criminal damage to property in violation of defendant's sixth amendment right to confront the witnesses against him. We reverse and remand with directions.

¶ 4                                    I. BACKGROUND

¶ 5          In November 2018, the State charged defendant with criminal damage to property (720 ILCS 5/21-1(a)(1) (West 2018)). The charges stemmed from an incident on November 9, 2018, where defendant "knowingly damaged property of Jason Andr[i]s" when he kicked in the back door to his girlfriend's, Marilyn Brown, apartment, without the owner's—Andris's—consent.

¶ 6                              A. Pretrial Motion *in Limine*

¶ 7          On May 9, 2019, the trial court held a hearing on the State's oral motion *in limine* to admit into evidence a recording of a November 9, 2018, 911 call placed by defendant's girlfriend, Marilyn Brown. Initially, the court summarized the prior proceedings as follows:

> "When we were in court on May 8 we appeared for a jury
> pretrial in advance of the May 13 jury trial setting in this case. At
> that time Count I was amended on its face without objection, and
> the State orally moved for a pretrial ruling *in limine* on the
> admissibility of an underlying 911 call. At the time the defense
> counsel objected because the Court had previously scheduled a
> May 1 trial motions deadline. In a discussion with the attorneys I
> learned that the State came into possession of the 911 recording
> after the May 1 deadline. Defense counsel's objection to the Court
> setting a hearing on the State's oral motion was overruled, and then

the cause was set over for today so the Court would have time to

hear the recording and consider the motion."

The hearing then proceeded on the State's oral motion.

¶ 8        The State argued the 911 recording should be admitted into evidence under the

excited utterance exception to the hearsay rule.  The State identified three factors to consider

when determining whether the exception applies and noted the "facts are viewed in the totality of

the circumstances under the case law."  The State argued,

> "You Honor, I think timingwise, I think the 911 call
>
> indicates that it had just occurred, that the defendant had just left,
>
> and so I think timingwise it's the State's position that—that that
>
> stress of that event predominated that call.
>
> We would note, Your Honor, that Ms. [Marilyn] Brown
>
> identified the defendant as her boyfriend, a domestic relationship,
>
> and that just the evidence of that door being kicked in would be
>
> such an event that would cause Ms. [Marilyn] Brown to be excited,
>
> and that her statement on the 911 call should be admitted."

While the State admitted Marilyn Brown's voice during the 911 call did "not sound excited or

stressed," it did not think that factor was determinative.  The State also informed the trial court

that on the 911 call it "sounds like Ms. [Marilyn] Brown is talking to someone else while she is

on the phone with 911[.]"

¶ 9        The State played the one minute and 28 second 911 telephone call for the court.

The following is a transcript of the 911 recording:

> "Operator: 911. What's the address of the emergency?

Caller: 808 West Market Street.

Operator: What's going on?

Caller: Uhh, my boyfriend just came and kicked my door in.

Operator: Is he still there?

Caller: Nope.  He just pulled off in his car.

Operator: Okay.  What's the apartment number?

Caller: 2B

Operator: Does he live there?

Caller: Nope.

Operator: What's his name?

Operator: What's his name?

Caller: Jestin last name Covington.

Operator: What's the last name?

Caller: Jestin Covington.

Operator: Okay.  And is he—how old is he?

Caller: He's 31.

Operator: Do you know his birthday?

Caller: 6/19/87.

Operator: Is he white, black, or Hispanic?

Caller: (No response).

Operator: Is he white, black, or Hispanic?

Caller: (No response)

Operator: Ma'am.

Caller: I'm—I'm sorry?

Operator: Is he white, black, or Hispanic?

Caller: Black.

Operator: And what was he wearing tonight?

Caller: I don't know.

Operator: Alright—(Telephone call disconnects)."

¶ 10       After the State played the 911 recording, the State informed the trial court that to lay a foundation for the 911 call, it would call Carmen Brown, the 911 operator, and Officer Hunter Clark, the police officer dispatched to Marilyn Brown's apartment on November 9, 2018. Carmen Brown would testify that she worked on November 9, 2018, and received the 911 call and spoke to the caller. Officer Clark would testify he spoke with Marilyn Brown on November 9, 2018, and on November 12, 2018, during his follow up investigation on the case, and that he "was familiar with her voice and could identify it on the 911 call."

¶ 11       Defense counsel argued the recording did not qualify as an exited utterance where "there was ample time to reflect on the situation." Further, defense counsel stated,

> "As the Court heard from the 911 phone call, Ms. [Marilyn]
> Brown was no longer under the—the stress of this alleged incident.
> She indicates that the suspect had already left the scene. It is also
> the defense's position that—that this was not a startling event, at
> least sufficiently startling event. I would just argue that in hearing
> the 911 phone call, we do not hear from Ms. [Marilyn] Brown
> information or tone in voice that one would expect to hear. As
> she's answering some of the operator's questions, her voice lacks a

sincerity. She is responding to questions of, is he still there? Nope, he just pulled away. Does he live there? Nope. The operator continues to try to ask questions, I believe as to his race, his date of birth, and it sounds as if Ms. [Marilyn] Brown is speaking to other individuals. Listening to the 911 phone call, more than once you can hear some laughing in the background, as well as ultimately it's what sounds like Ms. [Marilyn] Brown disconnects the phone call, not even completing the information or description in its entirety. That—that then points to her—lack of sincerity or the— or the sufficiency of the startling event."

¶ 12    Defense counsel also argued the admission of the 911 recording would be a "violation of the confrontation clause in that the statements made by Ms. [Marilyn] Brown are those that are testimony [*sic*] in nature." Defense counsel cited *Davis v. Washington*, 547 U.S. 813 (2006), as instructive in determining whether Marilyn Brown's statements in the 911 recording were testimonial. Defense counsel asserted Marilyn Brown's statements were testimonial because there was no "franticness" in her voice during the call where she casually answered the operator's questions and talked to others in the background. Defense counsel also argued Marilyn Brown was not "facing an ongoing emergency." Ultimately, defense counsel stated, "It's for those reasons that the defense asks this Court to deny the State's motion *in limine*, first based on this not being an excited utterance, as well as a violation of the confrontation clause." In response, the State argued the statements in the 911 recording were not testimonial and thus not barred by the confrontation clause.

- 6 -

¶ 13     After the trial court played the 911 recording for a second time, the court asked the State whether "the trial evidence would include any other evidence corroborating the proximity in time from the 911 call to the actual event?" The State responded, "No, I don't think I have any evidence to show that, Your Honor." The court also asked the State if Marilyn Brown was under subpoena and, if so, whether the State intended to enforce the subpoena. The State informed the court that it would neither file a contempt petition nor seek a warrant to compel her attendance.

¶ 14     The court then ruled on the State's motion. The court acknowledged, "Certainly there are recordings which are clearly more excited than the one tendered here." After listening to the 911 recording, the court found as follows,

> "[T]here does appear to be laughter in the background from people who are with Ms. [Marilyn] Brown, if she is, in fact, the declarant. I could not tell either whether Ms. [Marilyn] Brown was laughing. Certainly she was distracted by the side conversation at some point and was not tuned into the call. When I listened the second time, I listened very closely, the Court does potentially detect some anger, and some [sadness] in the timber, or the [tenor] of her voice, but I don't know the witness, only a minute 28 seconds of her voice at the most to assess that. Certainly there are issues."

The court further stated, "she did not seem very excited. Her answers were somewhat flippant, but I can't say from listening closely that she was not laboring under the excitement of a startling event." Ultimately, the court ruled "the oral motion is granted subject to the adequate foundation and corroborating evidence being admitted at trial."

¶ 15                              B.  Defendant's Jury Trial

¶ 16        At defendant's May 13, 2019, jury trial, the trial court first addressed a few

preliminary matters.  In relevant part, the court summarized its prior ruling on the State's motion

*in limine* as follows: "the Court did grant the motion and ruled that the Court is likely to admit

the recording today at trial if the proper evidentiary foundation is laid as the State represents that

it would be[.]"  In response, defense counsel made an oral motion to reconsider the ruling on the

State's motion *in limine*.  Defense counsel asked the court to "reconsider not allowing the 911

phone call in as an excited utterance."  In support of reconsideration, defense counsel argued, in

part, criminal damage to property in the form of Marilyn Brown's door being kicked in did not

"come close to creating a startling or spontaneous unreflective statement such as to bypass

[defendant's] confrontation rights."  After a brief argument from the State, the court took the

motion to reconsider under advisement.

¶ 17        Below, we summarize the relevant testimony elicited during defendant's trial.

¶ 18                              1.  *Officer Hunter Clark*

¶ 19        Hunter Clark, a Bloomington, Illinois, police officer, testified that on November

9, 2018, around 10:50 p.m. he received a dispatch to 808 West Market Street, apartment 2B in

Bloomington for a criminal damage to property incident.  Upon arrival at the scene, Officer

Clark met with Marilyn Brown, the resident of the apartment and he observed damage to the

back door of the apartment.  Officer Clark testified the back door was damaged and "[i]t looked

like there was blunt force applied to the door[,]" specifically, "as though the door had swung

open and the doorknob had hit the wall."  Officer Clark viewed photographs and stated the

photographs depicted damage to the back door.  The court admitted the photographs into

evidence without objection. The State then published the photographs to the jury, and Clark provided a narrative of the damage depicted in each picture.

¶ 20            Officer Clark testified he spoke with Marilyn Brown on two occasions— November 9, 2018, and November 12, 2018. Officer Clark testified that based on his conversations with Marilyn Brown, he was "relatively" familiar with Marilyn's voice. The State then handed Officer Clark a compact disc (CD) that he recognized as a recording of the 911 telephone call made November 9, 2018. Officer Clark testified he listened to the 911 call prior to testifying. Over objection, Officer Clark testified he recognized the caller's voice on the 911 call. When the State asked Officer Clark who he recognized the caller to be, he responded, "It sounds very similar to Marilyn Brown." Over a second objection, the State asked Officer Clark if he recognized the caller on the CD to be Marilyn Brown and he responded, "Yes."

¶ 21            During his investigation, Officer Clark identified defendant as the suspect. However, when Officer Clark responded to Marilyn's apartment on November 9, 2018, defendant was not there. Subsequently, Officer Clark attempted to contact defendant. On November 12, 2018, Officer Clark returned to Marilyn's apartment to speak with her about defendant. Officer Clark testified he eventually spoke with defendant, who informed him that he and Marilyn "have a child together, and they had previously broken up from a dating relationship."

¶ 22            On cross-examination, Officer Clark testified that before November 9, 2018, he had never been to Marilyn's apartment at 808 West Market Street, nor did he know what the door looked like prior to November 9. On November 9, 2018, when Officer Clark talked to Marilyn at the apartment, he failed to recall if Marilyn was crying when he arrived. Officer Clark testified Marilyn did not have any physical injuries when he arrived at the apartment.

Also, when Officer Clark arrived at the apartment, Marilyn was on her cellular telephone. Officer Clark had to ask Marilyn to hang up the telephone. Officer Clark testified Marilyn's demeanor was calm and she was not frantic. Officer Clark did not see anyone else inside the residence.

¶ 23 Officer Clark also testified that on November 12, 2018, Marilyn told him defendant did not come into the apartment on the night of November 9, 2018. The State objected and the trial court admitted the testimony for the limited purpose of showing that Marilyn made the statement and the possible conflict between the statement and other evidence. The court reiterated the "statement is not admissible for the truth of the matter asserted."

¶ 24 On redirect examination, Officer Clark testified that on November 12, 2018, he spoke with Marilyn at her apartment where she denied defendant was present. However, Officer Clark observed defendant "inside the apartment, Marilyn's apartment."

¶ 25                                   2. *Carmen Brown*

¶ 26 Carmen Brown, a dispatcher for the Bloomington Police Department, testified that on November 9, 2018, around 10:50 p.m., she received a 911 telephone call from an individual residing at 808 West Market Street, apartment 2B in Bloomington. Carmen spoke with the caller but she stated, "I believe she hung up on me." Carmen testified the 911 call was recorded in the normal course of business. Carmen recognized the CD that contained the 911 call and stated she listened to the recording prior to testifying. Carmen confirmed the recording "fairly and accurately" represented her conversation with the caller.

¶ 27 The State moved to admit the 911 recording through Carmen. Defense counsel interjected, "we have no objection to foundation for its admission into evidence. We would object to any publication at this time for foundation requirements." The trial court asked, "so

- 10 -

there's no objection to the admission of State's Exhibit 1?" Defense counsel responded, "No, Your Honor, no objection." The court ruled, "Okay. State's Exhibit 1 is admitted. That's all that's before me at this point."

¶ 28　　　　The State then moved to publish the 911 recording to the jury. Defense counsel objected, and a conference was held outside the presence of the jury. Defense counsel argued foundation for an excited utterance required more than a simple identification. Specifically, "It requires further foundational evidence regarding the mental state of the declarant, the time frame opportunity for reflection. Based on the Court's earlier ruling regarding the need for further foundation, it is our position that that portion of the foundation has not been established." The court reminded the parties, "Defense just allowed the exhibit to be admitted without objection." Defense counsel responded,

> "Your Honor, we have no objection to the foundation that this is the recording. However, there's a separate foundational requirement for an excited utterance. And that is in the mental state and the timing, and we believe the State failed to lay that portion of the foundation. So while this is the recording, we don't object to that. The actual publication admission to the jury we believe is subject to further foundation."

¶ 29　　　　The court rejected defense counsel's position stating, "I believe the defense has waived this issue by allowing the admission of the recording." Further, the court found the concerns counsel expressed "go to the admissibility of the statement. I mean, if counsel intended to stipulate that the recording is the recording in question, that's fine, but allowing it to be

admitted without objection essentially—I mean, it cures the potential foundational defects that the State had. It's overruled."

¶ 30        Back in the presence of the jury, the court overruled defense counsel's objection and allowed the 911 recording to be published to the jury. Due to the recording being hard to hear, the State played the 911 recording for the jury two times.

¶ 31                        3. *Jason Andris*

¶ 32        Jason Andris testified he owned the apartment building located at 808 West Market Street in Bloomington. Andris testified that on November 9, 2018, Marilyn resided in apartment 2B. Marilyn began renting the apartment from Andris in 2016. After November 9, 2018, Marilyn informed Andris of the damage to the apartment. On November 10 or 11, Andris went to the apartment to view the damage to the back door. Andris viewed photographs and confirmed the photographs "fairly and accurately" depicted the damage he observed to the property. Andris testified he never gave anyone permission to damage the door. Andris stated he met defendant after Marilyn moved into the apartment but defendant was not a leaseholder at 808 West Market Street.

¶ 33        4. *Oral Motion to Reconsider and Motion for Directed Verdict*

¶ 34        After the State rested, the trial court addressed its ruling on defense counsel's oral motion to reconsider the ruling on the State's motion *in limine*. The court stated, "At this point, the Court deems that issue resolved and moot by virtue of the admission without objection or qualification of State's Exhibit 1. And, as a result, the Motion to Reconsider is denied because the exhibit was admitted without objection." Defense counsel then made a motion for a directed verdict. The court denied the motion.

¶ 35                        5. *Jury Verdict*

¶ 36    The next day, May 14, 2019, the jury found defendant guilty of criminal damage to property.

¶ 37    C. Defendant's Posttrial Motions and Sentencing

¶ 38    On May 31, 2019, defendant filed a motion for a new trial, alleging (1) defendant was not proven guilty beyond a reasonable doubt; (2) the trial court erred in granting the State's motion *in limine* to admit the 911 recording as an excited utterance; (3) the court erred in denying defendant's motion to reconsider the court's ruling on the motion *in limine*; (4) the court erred in overruling defendant's foundation objection to the admission of the 911 recording; (5) the court erred in overruling certain objections to Officer Clark's testimony; and (6) the court erred in denying defendant's motion for directed verdict. After a July 2, 2019, hearing on defendant's motion for a new trial, the trial court denied the motion.

¶ 39    Following two continuances by the State, the court sentenced defendant on August 27, 2019. The court sentenced defendant to 24 months' conditional discharge, 90 days in the McLean County jail (stayed), and 30 hours of community service. On September 9, 2019, defendant filed a motion to reconsider sentence arguing his sentence "was excessive." On September 30, 2019, the trial court denied the motion to reconsider and directed the circuit clerk to file a timely notice of appeal on behalf of defendant.

¶ 40    This appeal followed.

¶ 41    II. ANALYSIS

¶ 42    A. Hearsay Statements

¶ 43    On appeal, defendant argues the trial court erred when it admitted into evidence testimonial hearsay statements on the 911 recording that identified defendant as the perpetrator of criminal damage to property in violation of defendant's sixth amendment right to

confrontation as discussed in *Crawford v. Washington*, 541 U.S. 36 (2004), and *Davis*, 547 U.S. 813. The State argues the trial court properly admitted the 911 recording under the excited utterance exception to the hearsay rule. Moreover, the State argues the statements in the 911 recording were nontestimonial in nature and the admission of the 911 recording did not violate defendant's sixth amendment right to confrontation. We first address whether the statements in the 911 recording are admissible under the excited utterance exception to the hearsay rule.

¶ 44                              B.  Excited Utterance Exception

¶ 45            "Hearsay evidence is an out-of-court statement offered to prove the truth of the matter asserted, and it is generally inadmissible due to its lack of reliability unless it falls under an exception to the hearsay rule." (Internal quotation marks omitted.) *People v. Burney*, 2011 IL App (4th) 100343, ¶ 38, 963 N.E.2d 430. For the hearsay statement to be admissible under the excited utterance exception, "there must be an occurrence sufficiently startling to produce a spontaneous and unreflecting statement, there must be an absence of time for the declarant to fabricate the statement, and the statement must relate to the circumstances of the occurrence." *People v. Sutton*, 233 Ill. 2d 89, 107, 908 N.E.2d 50, 62 (2009). "When determining whether a hearsay statement falls under the excited-utterance exception, courts look at the totality of the circumstances." *Burney*, 2011 IL App (4th) 100343, ¶ 38. "The totality of the circumstances analysis involves consideration of several factors, including time, the mental and physical condition of the declarant, the nature of the event, and the presence or absence of self-interest. *Sutton*, 233 Ill. 2d at 107.

¶ 46            "Evidentiary rulings are within the sound discretion of the trial court and will not be reversed unless the trial court has abused that discretion." *People v. Caffey*, 205 Ill. 2d 52, 89, 792 N.E.2d 1163, 1188 (2001). "An abuse of discretion will be found only where the trial

court's ruling is arbitrary, fanciful, unreasonable, or where no reasonable person would take the view adopted by the trial court." (Internal quotation marks omitted.) *Burney*, 2011 IL App (4th) 100343, ¶ 40.

¶ 47 Here, in looking at the totality of the circumstances, we find the trial court erred when it found the statements in the 911 recording fell under the excited utterance exception to the hearsay rule. Carmen testified she received a 911 call on November 9, 2018, around 10:50 p.m. from an individual residing at 808 West Market Street, apartment 2B in Bloomington. Carmen spoke with the caller, but she stated, "I believe she hung up on me." The State admitted the 911 recording through Carmen. In the 911 recording, the caller informed Carmen her boyfriend kicked in her door but he had left the scene in his car. The caller did not allege her boyfriend caused her any physical injury or threat of injury. The caller also provided her location and defendant's name as the perpetrator.

¶ 48 Officer Clark testified he received a call from dispatch around 10:50 p.m. on November 9, 2018, to respond to 808 West Market Street, apartment 2B. Once Officer Clark arrived at the scene, he spoke with Marilyn Brown, who resided in the apartment, and observed damage to the back door of the apartment. Officer Clark testified he failed to recall if Marilyn was crying when he arrived on scene. However, Marilyn did not have any physical injuries, and Officer Clark described Marilyn's demeanor as calm and not frantic. Officer Clark did not see anyone else inside the residence when he arrived on scene. Officer Clark also listened to the 911 recording and confirmed Marilyn's voice as the caller in the 911 recording.

¶ 49 Given Officer Clark's description of Marilyn's calm demeanor when he arrived on scene and the information Marilyn provided to Carmen along with Marilyn abruptly ending the 911 call, we do not find the event in question can be seen as sufficiently starling to produce a

spontaneous statement. Further, the State failed to demonstrate how much time elapsed from the door being damaged to Marilyn calling 911 or Officer Clark arriving on scene. Moreover, in the 911 recording other people can be heard in the background of Marilyn's 911 call but when Officer Clark arrived on scene no one else was in the apartment besides Marilyn. Thus, with the unknown passage of time between the event, the 911 telephone call, and Officer Clark's arrival, we are unable to conclude Marilyn lacked time to fabricate her statement.

¶ 50 Based on the evidence, we find the trial court abused its discretion in finding the statements on the 911 recording fell within the excited-utterance exception to the hearsay rule. Although we find the 911 call was clearly not an excited utterance, the standard of review on this question—abuse of discretion, does give us pause. However, without hesitation, we find admitting the 911 call violated the confrontation clause. Thus, we address whether the admission of the 911 recording violated defendant's sixth amendment right to confrontation.

¶ 51 C. Confrontation Clause

¶ 52 Defendant contends the trial court violated his constitutional right to confrontation when it allowed the State to admit into evidence the 911 recording. Defendant argues the statements on the 911 recording were testimonial hearsay, provided by Marilyn, who did not testify at trial, admitted for the truth of the matter asserted. Because defendant did not have a prior opportunity to cross-examine Marilyn concerning the contents of the 911 recording and she was not shown to be unavailable at trial, defendant asserts the 911 recording was inadmissible. The State argues the statements on the 911 recording were nontestimonial in nature and the admission of the 911 recording did not violate defendant's sixth amendment right to confrontation.

¶ 53	To preserve an error for consideration on appeal, a defendant must object to the error at trial and raise the error in a posttrial motion. *People v. Sebby*, 2017 IL 119445, ¶ 48, 89 N.E.3d 675. Failure to do so constitutes forfeiture. *Id.* However, we may consider a forfeited claim where the defendant demonstrates a plain error occurred. Ill. S. Ct. R. 615(a) (eff. Jan. 1, 1967). To prevail under the plain error doctrine, defendant must first demonstrate a clear and obvious error occurred. *People v. Piatkowski*, 225 Ill. 2d 551, 565, 870 N.E.2d 403, 410-11 (2007). If an error occurred, we will only reverse where (1) "the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error" or (2) the "error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *Id.* Defendant acknowledges he forfeited this issue on appeal where he failed to both object at trial to the admission of the 911 recording based on the confrontation clause and raise the issue in a posttrial motion. See *Sebby*, 2017 IL 119445, ¶ 48. Accordingly, we turn to whether the admission of the 911 recording violated defendant's right to confrontation, resulting in a clear or obvious error.

¶ 54	1. *Clear or Obvious Error*

¶ 55	The confrontation clause in the sixth amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right *** to be confronted with the witnesses against him." U.S. Const., amend. VI. The sixth amendment applies to the states through the fourteenth amendment. *Burney*, 2011 IL App (4th) 100343, ¶ 45; U.S. Const., amend. XIV.

¶ 56	In *Crawford*, the United States Supreme Court held testimonial out-of-court statements may be admitted as evidence at trial if the declarant testifies or the declarant is

unavailable and the defendant has had a prior opportunity to cross-examine the declarant. *Crawford*, 541 U.S. at 53-54. The Supreme Court in *Crawford* did not define "testimonial" hearsay, although the court held that, at minimum, it must include statements made during police interrogation, as well as statements that are the result of other types of formal questioning. *Id.* at 68.

¶ 57         Thereafter, in *Davis*, 547 U.S. 813, and its companion case, *Hammon v. Indiana*, 547 U.S. 813 (2006), the Supreme Court explained that a statement to law enforcement personnel will be deemed "nontestimonial" if the circumstances objectively indicate that the primary purpose of the interrogation is to gather information to meet an ongoing emergency. *Davis*, 547 U.S. at 822. Further, the Supreme Court provided that a statement to law enforcement will be deemed "testimonial" if circumstances objectively indicate there is no ongoing emergency and the primary purpose of the interrogation is to establish or prove past events to identify or convict the perpetrator. *Id.*

¶ 58         In *Davis*, the victim of a domestic assault made a 911 call describing the attack while it occurred and answered other questions. *Id.* at 818. The Supreme Court found the interrogation that took place during the 911 call was not testimonial. *Id.* at 827-28. However, in so holding, the *Davis* Court recognized that a conversation that begins as an interrogation to determine the need for emergency assistance can evolve into testimonial statements once that purpose has been achieved. *Id.* at 828. The Court explained that once "the [911] operator gained the information needed to address the exigency of the moment" and the victim informed the operator that the defendant had driven away, the emergency appeared to have ended. *Id.* Therefore, the Court determined it could be maintained that the statements in response to the operator's questions from that point on were testimonial. *Id.* at 828-29. In *Michigan v. Bryant*,

562 U.S. 344 (2011), the Supreme Court revisited the "ongoing emergency" rule enunciated in *Davis*. The Court provided examples of where a conversation that begins as an interrogation to determine the need for emergency assistance evolves into testimonial statements. *Id.* at 365. Specifically, the Court stated,

> "This evolution may occur if, for example, a declarant provides police with information that makes clear that what appeared to be an emergency is not or is no longer an emergency or that what appeared to be a public threat is actually a private dispute. It could also occur if a perpetrator is disarmed, surrenders, is apprehended, or as in *Davis*, flees with little prospect of posing a threat to the public." *Id.*

¶ 59 The Illinois Supreme Court applied *Crawford* and *Davis* in *People v. Stechly*, 225 Ill. 2d 246, 870 N.E.2d 333 (2007). In *Stechly*, a plurality of the court held that a testimonial statement is one which is (1) made in solemn fashion and (2) is intended to establish a particular fact. *Id.* at 281-82. "In general, a statement is testimonial if the declarant is acting in a manner analogous to a witness at trial, describing or giving information regarding events that have already occurred." *Sutton*, 233 Ill. 2d at 111 (citing *Stechly*, 225 Ill. 2d at 281-82). "[W]hen the statement under consideration is the product of questioning, either by the police or someone acting on behalf of law enforcement, the objective intent of the questioner is determinative." *Id.*

¶ 60 In accordance with the case law, we find the statements in the 911 recording constituted testimonial hearsay. Marilyn did not make the statements in the 911 recording in response to an ongoing emergency. Rather, it is apparent there was no "ongoing emergency" where defendant had "pulled off in his car." Further, Marilyn answered Carmen's questions in a

calm manner, Marilyn never alleged any physical harm or a perceived threat of violence, and other people can be heard talking and laughing in the background of the 911 recording. Carmen never inquired if Marilyn needed medical attention. Marilyn sounded distracted and disinterested while speaking with Carmen. Marilyn also abruptly ended the phone call midway through providing information to Carmen. Further, based on the information provided by Marilyn, it was apparent defendant posed little to no threat to the public where the case was domestic in nature. See *Bryant*, 562 U.S. at 365.

¶ 61 During the 911 recording, Carmen first asked Marilyn for her address and "What's going on?" Marilyn provided her address and stated, "Uhh, my boyfriend just came and kicked my door in." In response, Carmen asked if he was still there to which Marilyn responded, "Nope. He just pulled off in his car." Carmen then went on to ask Marilyn her boyfriend's name, age, birthday, race, and what he was wearing. Marilyn identified defendant as the perpetrator.

¶ 62 Before Marilyn identified defendant as the perpetrator, she provided sufficient information to the 911 operator to objectively indicate there was no "ongoing emergency." See *Davis*, 547 U.S. at 828-29; *Bryant*, 562 U.S. at 365. Because the "primary purpose of the interrogation" was not "to enable police assistance to meet an ongoing emergency" but rather to establish past events and identify the perpetrator, we find the statements on the 911 recording constituted testimonial hearsay. See *Davis*, 547 U.S. at 822.

¶ 63 Having found the statements on the 911 recording constituted testimonial hearsay, we look to *Crawford* to determine whether the admission of the 911 recording violated defendant's constitutional right to confrontation. As stated above, under *Crawford*, a testimonial out-of-court statement may be admitted as evidence at trial if the declarant testifies or the

- 20 -

declarant is unavailable and the defendant has had a prior opportunity to cross-examine the declarant. *Crawford*, 541 U.S. at 53-54. However, here, Marilyn did not testify at defendant's trial, and defendant did not have a prior opportunity to cross-examine her concerning the contents of the 911 recording. Further, we find the State failed to establish Marilyn was unavailable to testify at defendant's trial. Consequently, when the trial court allowed the State to admit into evidence the 911 recording, which constituted testimonial hearsay, it violated defendant's right to confrontation, and a clear error occurred. Having found a clear or obvious error, we turn to whether the error amounted to first-prong plain error.

¶ 64                                     2. *First-Prong Plain Error*

¶ 65            Under first-prong plain error, "a reviewing court must decide whether the defendant has shown that the evidence was so closely balanced the error alone severely threatened to tip the scales of justice." *Sebby*, 2017 IL 119445, ¶ 51. To determine "whether the evidence adduced at trial was close, a reviewing court must evaluate the totality of the evidence and conduct a qualitative, commonsense assessment of it within the context of the case." *Id.* ¶ 53 (citing *People v. Belknap*, 2014 IL 117094, ¶¶ 52-53, 23 N.E.3d 325). "A reviewing court's inquiry involves an assessment of the evidence on the elements of the charged offense or offenses, along with any evidence regarding the witnesses' credibility." *Id.*

¶ 66            Defendant argues that without the 911 recording being admitted at trial, the evidence presented would have been insufficient to prove defendant damaged Marilyn's back door. Thus, where the evidence was so closely balanced, the improper admission of the 911 recording identifying defendant as the perpetrator tipped the scales of justice against defendant. We agree.

¶ 67        The 911 recording was the only evidence the State presented at trial that identified defendant as the person who damaged the door.  Without the 911 recording, no other evidence tied defendant to the criminal damage to property crime.  For example, no eyewitnesses testified that defendant damaged the door.  Rather, the State presented evidence from Officer Clark and Andris, who were not present at the time the door was damaged.  Both men observed the damage to the door after the fact.  The State failed to call anyone who may have been in the apartment at the time to testify as to what happened to the door or who caused the damage.

¶ 68        We find the improper admission of the 911 recording tipped the scales of justice against defendant where it was the only piece of evidence that identified him as the perpetrator.  Accordingly, where the evidence was closely balanced, we find the error in this case constitutes first-prong plain error, and defendant's conviction must be reversed and remanded for a new trial.

¶ 69        Because we found first-prong plain error, we need not address defendant's alternative ineffective assistance of counsel claim.

¶ 70        Although not raised by the State or defendant, we further find the double-jeopardy clause does not preclude retrial in this matter because the evidence presented during trial was sufficient to sustain a conviction.  See *People v. Drake*, 2019 IL 123734, ¶ 21, 131 N.E.3d 555.  Here, when considering all the evidence presented at defendant's trial, including the improperly admitted 911 recording, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  *Id.*  Therefore, we reverse defendant's conviction and remand for a new trial.

¶ 71                                III. CONCLUSION

¶ 72        For the reasons stated, we reverse the trial court's judgment and remand for a new

trial.

¶ 73        Reversed and remanded with directions.