THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ROBERT WENKUS, Defendant-Appellant.

Second District    No. 2—87—0144

Opinion filed June 30, 1988.

G. Joseph Weller and Mary Kay Schick, both of State Appellate Defender's Office, of Elgin, for appellant.

James E. Ryan, State's Attorney, of Wheaton (William L. Browers and Martin P. Moltz, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE INGLIS delivered the opinion of the court:

Defendant, Robert Wenkus, was convicted of criminal damage to property (Ill. Rev. Stat. 1985, ch. 38, par. 21—1(a)), criminal trespass to land (Ill. Rev. Stat. 1985, ch. 38, par. 21—3(a)), and battery (Ill. Rev. Stat. 1985, ch. 38, par. 12—3(a)(1)), after a bench trial. He was sentenced to one-year probation concurrent on all charges, with the first 180 days in the county jail. The trial court found that defendant committed bodily harm in relation to the battery and therefore denied defendant "good time credit." Defendant appeals from the denial of a

"good behavior allowance" which he claimed pursuant to section 3 of the County Jail Good Behavior Allowance Act (Act) (Ill. Rev. Stat. 1987, ch. 75, par. 32). We affirm.

The parties agree that the issue for review is whether "good time credit" should be applied against defendant's county jail sentence. We initially note that the parties use the term "good time credit" when referring to the "good behavior allowance" provided for by statute. (See Ill. Rev. Stat. 1987, ch. 75, par. 32.) While we doubt that no matter how good a defendant's behavior may be while incarcerated, he seldom, if ever, is having a good time; we nonetheless bow to common practice and use the terms interchangeably.

The charges arise out of a fight at the home of Ruben Skinner during a birthday party for Ruben's teenage daughter, Joelle. The altercation took place after defendant, who was an uninvited guest, refused to leave when requested to do so by Joelle.

Ruben testified that he allowed his daughter to have a birthday party at his home on the night of March 2, 1986. Ruben left the home at about 6 p.m. on that date and returned at about 9 a.m. the following day. When Ruben returned to his home, the plasterboard in the entryway was cracked, and several wall hangings, a glass table, and the kitchen window were broken.

Joelle testified that she invited 40 to 45 people to the party. At approximately 11:30 p.m., defendant and a companion arrived. Joelle asked defendant to leave five or six times because he had not been invited. One of the guests, Chris Wilson, joined Joelle in asking defendant to leave. A fight broke out between Wilson and defendant, at which time Joelle was hit in the face. Although Joelle could not identify which person hit her, she testified that defendant pushed her down a stairwell after she was struck. Joelle testified that she bumped her chin on one of the stairs and that she felt "pain" when that occurred. Joelle stated that she ascended the stairs and started hitting defendant on the back. By this time, a group of people had congregated in the hallway. Defendant was bent over and several people circled around him as he was trying to get out of the house. Defendant eventually got free and ran out of the back door.

Laurie Rushton, a guest at the party, testified that she was in the kitchen when defendant entered the Skinner home. Defendant was holding a beer bottle when he arrived. Rushton saw defendant push Joelle down the stairs, but she did not see him strike anyone. Rushton further testified that someone in the group of people sprayed a can of mace and everyone in the crowd pushed their way outside. Defendant was bent over when he left the house and subsequently threw the

beer bottle at the kitchen window causing it to break.

At the close of all the evidence, defendant was found guilty of the offenses of battery against Joelle, criminal trespass to property, and criminal damage to property. Defendant was sentenced to concurrent terms of one-year probation with 180 days in jail. In pronouncing sentence, the court stated:

"The charge of battery against [Joelle] alleged bodily harm. I found bodily harm. Accordingly, there will be no good time credit."

Defendant appeals.

Defendant's appeal centers on defendant's interpretation of the term "physical harm" as it is used in the Act. Section 3 of the Act provides, in pertinent part:

"The good behavior of any person who commences a sentence of confinement in a county jail for a fixed term of imprisonment after January 1, 1987 shall entitle such person beginning on the date of sentence to a good behavior allowance, except that: (1) a person who inflicted physical harm upon another person in committing the offense for which he is confined shall receive no good behavior allowance ***." (Ill. Rev. Stat. 1987, ch. 75, par. 32.)

Defendant contends that his conduct was not violent and that Joelle did not suffer any physical harm as a result of his actions. Defendant argues that the Act requires a showing of more than mere "pain" before good-time credit can be denied to a person who is serving a county jail sentence. In making this argument, defendant struggles to distinguish between "bodily harm" as was found by the court and "physical harm" as is necessary for a denial of good-behavior credit. Although he acknowledges that the terms "physical" and "bodily" both refer to the human body, defendant quotes Webster's New World Dictionary 157 (2d ed. 1976), for the proposition that the term "physical," " 'while often interchangeable with "bodily," suggests somewhat *less directly* the anatomy and physiology of the body.' " (Emphasis added.) Defendant's conclusion that the legislature therefore "intended denial of good-time credit when a defendant causes harm to the anatomy or physiology of a person's body" seems to fail under the weight of his own authority.

■ Nonetheless, we see no more difference between "physical" and "bodily" than we do between "good behavior allowance" and "good time credit." Our own dictionary reports that "bodily" and "physical" are synonymous terms for referring to the human body and differ so little they are often interchangeable. (Webster's Third

New International Dictionary 245, 1706 (1971).) The legislature did not attempt to distinguish between them, and we believe that both have the same meaning under the Act. *Cf.* Ill. Rev. Stat. 1987, ch. 38, par. 12—12(b) (for purposes of statutory provisions regarding sexual assault, bodily harm means physical harm).

However, our conclusion that "bodily harm" and "physical harm" are synonymous for purposes of the Act does not end our inquiry. We next turn our attention to whether the "bodily harm" suffered in the instant action is sufficient for a denial of good-time credit. The record indicates that the harm suffered by the victim in the instant action was a feeling of pain after being pushed down a stairwell by defendant. Physical pain has been held to be sufficient to constitute "bodily harm." (*People v. Haywood* (1987), 118 Ill. 2d 263, 276-77; *People v. Mays* (1982), 91 Ill. 2d 251, 257.) We further note that our courts have found "bodily harm" where no medical attention was required and no evidence of injury was shown. (See *People v. Paez* (1977), 45 Ill. App. 3d 349, 350; *People v. McEvoy* (1975), 33 Ill. App. 3d 409, 411.) Particularly analogous to the instant action is *McEvoy*, where the defendant merely pushed the victim in the chest and caused him to fall into a row of lockers. *McEvoy*, 33 Ill. App. 3d at 410.

■■ In the instant action, the record indicates that defendant attempted to crash a private party, was requested to leave, became belligerent, started a fight with one person, and pushed the hostess down the stairs. As a result of defendant's conduct, which he characterizes as "not violent," Joelle fell, hit her chin, and felt pain. We believe that the record supports a finding of bodily harm and affirm the trial judge's decision.

Affirmed.

DUNN and REINHARD, JJ., concur.