**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2023 IL App (3d) 220371-U

Order filed December 6, 2023

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2023

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 18th Judicial Circuit, Du Page County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-22-0371 Circuit No. 20-DV-1372 |
| NATHANIEL LEE SIMONS, | ) ) ) | Honorable George A. Ford, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE ALBRECHT delivered the judgment of the court.
Presiding Justice Holdridge and Justice Hettel concurred in the judgment.

_____

**ORDER**

¶ 1      *Held*: (1) The erroneous admission of a hearsay statement made to a medical professional was not plain error. (2) The evidence was sufficient to sustain defendant's conviction. (3) Defendant was not denied his right to effective representation.

¶ 2      Defendant, Nathaniel Lee Simons, appeals his conviction for misdemeanor domestic battery, arguing (1) the Du Page County circuit court erred in allowing impermissible hearsay statements from medical personnel identifying defendant as the offender, (2) the State failed to

prove defendant guilty beyond a reasonable doubt, and (3) defendant was denied his constitutional right to effective assistance of counsel. We affirm.

¶ 3                                I. BACKGROUND

¶ 4        Defendant was charged with nine counts of misdemeanor domestic battery (720 ILCS 5/12-3.2(a)(1), (2) (West 2020)) against his then-girlfriend, Erica Bryce Broihan. Prior to trial, the State filed a motion *in limine* pursuant to Illinois Rules of Evidence Rule 803(4) (eff. Sept. 18, 2018) to introduce hearsay statements made by Broihan to Laura Hickox and Judy Zych, two nurses at Elmhurst Hospital emergency room who treated her following the incident. The transcript from the initial hearing on the motion is not included in the record. During a subsequent hearing, defense counsel stated, "I haven't seen those specific statements, which might be helpful and obviate the need for more argument[,]" but he was aware the hearsay statements were on pages 6 and 15 of the medical reports provided by the State. The court read the statements from Hickox and Zych on the record, including:

> "[h]e grabbed me by the throat with both hands from the front. He threw me to the ground and it hurt my back. He was choking me. I thought I was going to die. \*\*\* You are making me have sex with you. That's sexual assault. He put his hand over my nose and mouth really quickly. That's why my nose is hurting.
>
> \* \* \*
>
> \*\*\* [Broihan] states that her boyfriend, using both of his hands, picked me up by my neck and threw me to the ground. He then continued to choke me while I was on the ground. I couldn't breathe. I thought I was going to die. I told him I loved him, and I think that's why he stopped. States her lower back was hurting all

2

day yesterday. It was difficult to walk around. Also complaining of aching pain to her right biceps."

The court then asked if there was anything further from the parties. Both parties stated they had nothing further. The court admitted the statements.

¶ 5       At a bench trial on April 14, 2022, Broihan testified that defendant was her boyfriend from February 2018, until the incident on November 18, 2020. The two lived together in an apartment. That day, Broihan, defendant, and defendant's business partner were at the apartment. Broihan made dinner for them while they were working.

¶ 6       Once they were alone, defendant and Broihan began arguing. Broihan testified that defendant was upset because she did not ask whether he wanted cheese on his spaghetti. Broihan entered the bedroom to pack her belongings, placing items into a box. Defendant then threw the box to the ground. Defendant gave Broihan a hug, and she thought that they were no longer fighting, but defendant grabbed her phone from her pocket and refused to return it.

¶ 7       Broihan stated that she then entered the computer room, and defendant followed her because he was afraid she was going to damage his equipment. Defendant grabbed Broihan by the neck, strangled her, and picked her up high enough to lift her feet off the ground. Defendant then slammed her to the ground, got on top of her, and held her down with his legs while continuing to choke her. Broihan felt pain in her back when she was slammed to the ground.

¶ 8       Broihan told defendant she loved him to get defendant to stop choking her, which he did. Defendant then attempted to comfort her. Broihan went to the bathroom, and defendant followed her, closed the door behind them, and blocked the exit. Defendant told Broihan that they needed to have sexual intercourse to "rebond." Broihan said loudly, hoping a neighbor would hear her, "You're forcing me to have sex, that's sexual assault." Defendant put his hand over Broihan's face

3

and applied pressure to keep her quiet. Broihan heard a "snap," and felt pain in her nose. Because she was scared, Broihan performed oral sex on defendant, during which, defendant urinated in her mouth. Broihan testified she spit it out, and confronted defendant, but defendant denied it. They had sexual intercourse later that evening because Broihan felt compelled to do so.

¶ 9        The following day, Broihan could "barely even get out of bed." When defendant returned her phone to her, Broihan called her sister to come pick her up. Her family arrived and took her to the police station where officers suggested she go to the hospital.

¶ 10       Broihan testified that an X-ray of her nose was performed, which discovered that she had a deviated septum. She did not have that condition prior to the incident and there was nothing else that could have caused the problem. It limited the breathing through her nostrils to 25%. She underwent a medical procedure to fix her deviated septum. No medical records were introduced regarding her deviated septum.

¶ 11       While discussing her injuries, the State showed Broihan photographs and asked her if she recognized them, which she stated she did. She said, "[t]he detective took them and I took them." The State then asked, "are these photographs *** fair and accurate representations of your body as it was and the marks portrayed on your body as they were after November 18th of 2020?" Broihan responded, "Yes." The State then moved to admit the photographs into evidence with no objection. On cross-examination, defense counsel asked whether Broihan knew which photographs were taken on which dates, which she did not. Counsel then asked Broihan, "[s]o you don't know which pictures accurately depict how you looked the next day or how you looked days later or weeks later, correct?" Broihan responded that "[t]he detective has that information."

¶ 12       On redirect examination, the State separated the photographs into three groups. For each group, the State asked Broihan whether she recognized the photographs, how she recognized the

4

photographs, and if they were fair and accurate representations of her injuries. In response, Broihan testified that she recognized the photographs, where they were taken, and that they were fair and accurate depictions of her injuries. For some photographs, she was unable to recall if she took them. Broihan could also not recall the exact date she took all the photographs, but said it was "after the incident". Defense counsel objected to the admission of some of the photographs, arguing the State failed to lay a proper foundation. The court ruled that they were previously admitted without objection, so they were admitted.

¶ 13        Zych treated Broihan on November 19, 2020. Zych testified Broihan complained of pain in her back and right bicep and stated, "her boyfriend of two years had physically assaulted her." Broihan told Zych that he used both hands to pick her up by the neck, threw her to the ground, and continued to choke her. Broihan informed Zych her back hurt and she was having trouble walking because of the pain. On cross-examination, Zych testified that she only spoke to Broihan briefly, and she only complained of pain in her back and arm at that time.

¶ 14        Oakbrook Terrace Detective Nicole Demario testified that she met with Broihan at the police department on November 19, 2020. Broihan pointed out injuries to her nose and neck, which Demario photographed and identified. Demario further testified that Broihan later sent her additional photographs.

¶ 15        The parties stipulated that Hickox treated Broihan on November 19, 2020. Hickox would testify that she observed Broihan's injuries, including nasal bone tenderness and redness on the bridge of her nose. The parties further stipulated Broihan informed Hickox

> "[h]e grabbed me by the throat with both hands from the front, he threw me to the ground, and I hurt my back. He was choking me ***.

Broihan yelled, quote, You are making me have sex with you; he put his hand over my nose and mouth really quickly, that's why my nose is hurting, end quote."

¶ 16    Defendant testified that the night of the incident, defendant tried to talk to Broihan about how to better their relationship, to which she took offense. After defendant's answer about how the argument started, his counsel said, "Okay." Defendant then attempted to continue with his testimony, but the court interjected saying, "[t]here's no question [pending]. You may ask another question." Defense counsel responded, "Yeah, no, I'm just trying to process that, that's a new one to me."

¶ 17    Defendant stated that he and Broihan sat in the living room and talked. He was trying to "work through this thing with her." Broihan felt degraded by what he was saying and escalated the situation further. Defendant entered the bedroom to lay down, which is what he normally did to try and deescalate verbal altercations with Broihan. Broihan began packing her belongings, which was common in their relationship. However, defendant noticed Broihan packed some of his expensive belongings, so he got out of bed and tried to pick up the box. As he attempted to pick up the box, it fell over and there was glass that made a noise, which defendant described as "the trigger."

¶ 18    Broihan stated if he was going to break her belongings, she was going to break his belongings and walked toward the computer room. Defendant attempted to hug her around her waist while on his knees and asked her to calm down. Broihan's phone fell out of her pocket when he moved his arms during the hug. She picked up the phone and started yelling that it was against the law to take her phone and continued to move toward the computer room. Broihan spun around, and they bumped heads. Defendant tried to hug her again. At that time, Broihan was

6

hyperventilating so defendant attempted to help her to the bathroom. When they exited the computer room, Broihan fell. Defendant sat down next to her and rubbed her hair to soothe her. After she calmed down, she asked him to help her to the bathroom, which he did. Defendant laid in bed while Broihan remained in the bathroom.

¶ 19    Broihan then approached defendant and offered to perform oral sex. While performing oral sex, she suddenly said, "[e]w, what's that in my mouth[,]" ran to the bathroom, and spit. She said it was yellowish and asked if defendant had urinated in her mouth, which he denied. She continued to perform oral sex before they engaged in sexual intercourse. They fell asleep after. Defendant stated that it was normal to

> "have an extreme blow up, and then I would de-escalate, and she would go, oh, no, I had another spaz ***.
>
> And then she would—you know, we'd have make-up sex. She would come on to me and she would, like, forgive. We'd talk about it and everything would go kosher, and we would pass out."

¶ 20    Broihan slept later than defendant the next day, complaining of a headache, so defendant gave her medicine. Later that day, Broihan asked defendant to lay with her and initiated sexual relations with him. After having sexual intercourse, defendant ended the relationship with Broihan. He offered to give her money since he had been supporting her. They came to an agreement about their possessions.

¶ 21    Defendant stated that two days after the argument, Broihan left at approximately 9 a.m. and returned with police officers at 11 a.m. Broihan's family collected her belongings while defendant spoke with an officer. He stated that he was complying with Broihan's requests for

7

certain belongings. Defendant did not learn about the criminal charges against him until later that night and turned himself in.

¶ 22 Defendant was ultimately convicted of two counts of domestic battery—defendant caused bodily harm when he grabbed Broihan about the head and made physical contact of an insulting or provoking nature to Broihan when he grabbed her about the head. The court noted that it did not find defendant credible, explaining that he "painted himself as a savior at times, and his story and accounts do not line up with the facts that the Court has taken into account." Defendant filed a motion to reconsider, and the court explained its reasoning for upholding the convictions, relying on Broihan's testimony that defendant trapped her in the bathroom and grabbed her from behind, injuring her nose. The court went into detailed recounting of the testimony pertaining to the incident and injury. The counts merged, and defendant was sentenced to 1 year of conditional discharge and 14 days in jail for the bodily harm count.

¶ 23                                                    II. ANALYSIS

¶ 24 On appeal, defendant argues (1) the court erred in allowing hearsay statements from medical personnel identifying defendant as the offender, (2) the State failed to prove defendant guilty beyond a reasonable doubt, and (3) the cumulative errors committed by trial counsel denied defendant his constitutional right to effective assistance. We will consider each argument in turn.

¶ 25                                      A. Hearsay Medical Statement

¶ 26 Defendant first argues that the court erred in allowing hearsay statements from medical personnel as the statements identified defendant as the perpetrator. Defendant admits that he forfeited this argument by failing to raise it below but asks that we consider it under the plain error doctrine. "[T]he plain-error doctrine bypasses normal forfeiture principles and allows a reviewing court to consider unpreserved error when either (1) the evidence is close, regardless of the

seriousness of the error, or (2) the error is serious, regardless of the closeness of the evidence." *People v. Herron*, 215 Ill. 2d 167, 186-87 (2005). It is necessary to determine first whether the hearsay statements were impermissibly admitted as there can be no plain error if there is no error. *People v. Johnson*, 218 Ill. 2d 125, 139 (2005).

¶ 27 Hearsay evidence is generally inadmissible because there is no opportunity to cross-examine the declarant. *People v. Jura*, 352 Ill. App. 3d 1080, 1085 (2004). Illinois Rule of Evidence 803(4) (eff. Sept. 18, 2018) creates an exception to the general prohibition against hearsay statements to allow admission of statements made for purposes of medical treatment or diagnosis. Generally, statements made to medical personnel concerning the cause of an injury are admissible under the exception while statements identifying the offender are not pertinent to the victim's diagnosis or treatment and are therefore beyond the scope of the exception. *People v. Davis*, 337 Ill. App. 3d 977, 989-90 (2003).

¶ 28 At the outset, we find that the court did not err in allowing the stipulation of Hickox's testimony. As read, the stipulation only used the word "he" and did not identify defendant or include any characteristics to identify "he" as defendant. Instead, the stipulation only relayed the statements made by Broihan regarding the cause of her injuries. Hickox's testimony therefore fell squarely within the hearsay exception and was properly admitted. However, we find that Broihan's statement to Zych, identifying the assailant as her boyfriend of two years, was hearsay outside the scope of the exception and should not have been admitted. See *id.* Therefore, we must now determine whether the error is reversible under the plain error doctrine.

¶ 29 Defendant solely argues the error is reversible under the first prong. "[E]rrors reviewable under the first prong of the plain error rule are the type of errors that are subject to harmless error analysis, and a defendant must establish prejudice resulting from the error to excuse his forfeiture

9

of such an error." *People v. Jackson*, 2022 IL 127256, ¶ 23. Defendant is therefore required to show "the verdict 'may have resulted from the error and not the evidence.' " *People v. White*, 2011 IL 109689, ¶ 133 (quoting *Herron*, 215 Ill. 2d at 178). Here, defendant's identity was not at issue, and Broihan testified that defendant caused her injuries during the November 18, 2020, incident. Zych's testimony of defendant as the perpetrator solely provided cumulative evidence. Further, the court explained its reasoning for upholding the convictions during arguments on the motion for rehearing, and at no point did it indicate it was relying upon the erroneously admitted hearsay statement. Defendant has therefore failed to demonstrate the error was prejudicial.

¶ 30        In coming to this conclusion, we reject defendant's reliance on *People v. Oehrke*, 369 Ill. App. 3d 63 (2006), as it is distinguishable. In *Oehrke*, the victim passed away prior to trial and did not testify, therefore her hearsay statement identifying her son as the cause of her injuries was uncorroborated. *Id.* at 64-65, 71. In that situation, unlike here, the court was unable to determine if the result would have been the same if the statement was not admitted. *Id.* at 71.

¶ 31                                B. Sufficiency of the Evidence

¶ 32        When reviewing a challenge to the sufficiency of the evidence, we review the evidence in the light most favorable to the prosecution and determine whether any rational trier of fact could have found defendant guilty beyond a reasonable doubt. *People v. Collins*, 106 Ill. 2d 237, 261 (1985). We give the State the benefit of all reasonable inferences. *People v. Wheeler*, 226 Ill. 2d 92, 116 (2007). A conviction will only be reversed where the evidence is "so unreasonable, improbable, or unsatisfactory that it justifies a reasonable doubt of defendant's guilt." *Id.* at 115. The trier of fact is responsible for assessing the credibility of the witnesses, assigning the appropriate weight to testimony, and resolving discrepancies in the evidence. *People v. Evans*, 209 Ill. 2d 194, 211 (2004).

¶ 33        Here, defendant was convicted of two counts of domestic battery. Taken together, they required the State to prove defendant (1) caused bodily harm, and (2) made physical contact of an insulting or provoking nature, (3) to a family or household member. 720 ILCS 5/12-3.2(a)(1), (2) (West 2020); see *People v. Bissaillon*, 55 Ill. App. 3d 893, 894 (1977) ("A battery complaint need not allege that defendant's contact was both insulting and provoking and the cause of bodily harm ***."). The court found defendant guilty pursuant to both subsections (a)(1) and (a)(2), stemming from defendant putting his hand over Broihan's face in the bathroom.

¶ 34        Defendant primarily argues that the State failed to prove he caused bodily harm to Broihan. To establish bodily harm, the State must prove the victim suffered " 'some sort of physical pain or damage to the body, like lacerations, bruises or abrasions, whether temporary or permanent.' " *People v. Moffett*, 2019 IL App (2d) 180964, ¶ 43 (quoting *People v. Mays*, 91 Ill. 2d 251, 256 (1982)). "[T]here is no requirement that the evidence demonstrate a visible injury ***." *People v. McEvoy*, 33 Ill. App. 3d 409, 411 (1975). Physical pain alone is sufficient to constitute bodily harm. *People v. Wenkus*, 171 Ill. App. 3d 1064, 1067 (1988).

¶ 35        Here, the court found Broihan testified that she felt pain in her nose when defendant put his hand over her face, and the court found this testimony credible. See, *e.g.*, *id.* (bodily harm established where the only injury sustained by the victim was that she felt pain on her chin). The State also introduced other corroborating testimony including (1) Hickox's statement that Broihan had nasal bone tenderness and redness on the bridge of her nose, (2) Demario's testimony regarding Broihan's injuries, and (3) the photographs that were admitted. Taking the evidence in the light most favorable to the State, a rational trier of fact could have found defendant guilty beyond a reasonable doubt.

11

¶ 36    In coming to this conclusion, we reject defendant's assertion that the evidence was insufficient because there was no medical evidence that Broihan's nose was broken. The State was not required to prove that defendant broke Broihan's nose, but only that he caused her bodily harm. Moreover, we need not accept any conclusion made by the circuit court regarding Broihan's nose, as we can affirm for any reason in the record. See *People v. Perkins*, 2018 IL App (1st) 133981, ¶ 53.

¶ 37                                    C. Cumulative Error

¶ 38    Defendant claims he was denied his right to effective assistance of counsel due to the cumulative effect of several errors by counsel. Specifically, defendant claims counsel was ineffective for (1) failing to object to Broihan's testimony that she suffered a deviated septum requiring surgery; (2) stipulating and failing to object to the inadmissible hearsay from medical personnel identifying defendant; (3) failing to object to the State's photographs of Broihan, where it failed to establish proper foundation; (4) proceeding with the State's motion *in limine* without knowing which statements the State sought to introduce; and (5) undermining defendant's credibility by stating "that's a new one," in response to one of defendant's answers.

¶ 39    Situations may arise where a criminal defendant is deprived of a fair trial, not by any individual error, but by the cumulative effect of errors. *People v. Bush*, 2022 IL App (3d) 190283, ¶ 110. In such a case, fairness may require a new trial. *Id.* "However, the cumulative errors that warrant such an extreme result must themselves be extreme." *People v. Desantiago*, 365 Ill. App. 3d 855, 871 (2006). To determine whether the cumulative effect of various errors warrants a reversal in a criminal case, we must first evaluate the individual errors. *Bush*, 2022 IL App (3d) 190283, ¶ 110. "There generally is no cumulative error where the alleged errors do not amount to reversible error on any individual issue." *People v. Green*, 2017 IL App (1st) 152513, ¶ 118.

12

¶ 40    "[T]o prevail on a claim of ineffective assistance of counsel, a defendant must show that (1) counsel's representation fell below an objective standard of reasonableness, and (2) counsel's substandard representation so prejudiced the defense as to deny the defendant a fair trial." *People v. Horton*, 143 Ill. 2d 11, 23 (1991). To show counsel's performance was objectively unreasonable, a defendant must overcome the "strong presumption that the challenged action or inaction of counsel was the product of sound trial strategy and not of incompetence." *People v. Coleman*, 183 Ill. 2d 366, 397 (1998). "To show actual prejudice, defendant must establish that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.' " *Horton*, 143 Ill. 2d at 23 (quoting *Strickland v. Washington*, 466 U.S. 668, 694 (1984)). "The failure to satisfy either the deficiency prong or the prejudice prong of the *Strickland* test precludes a finding of ineffective assistance of counsel." *People v. Enis*, 194 Ill. 2d 361, 377 (2000).

¶ 41    First, we find that counsel's failure to object to Broihan's testimony was trial strategy. Counsel could have believed that such testimony was incredible and wanted it presented to the court. Moreover, the admission of Broihan's testimony regarding her deviated septum and subsequent surgery did not prejudice defendant. The State was not required to prove defendant caused an injury necessitating surgery, and there was sufficient evidence of injury supporting defendant's conviction without Broihan's testimony. *Supra* ¶ 35.

¶ 42    Second, counsel was not ineffective for stipulating to Hickox's testimony or failing to object to Zych's testimony. Hickox's testimony regarding the cause of Broihan's injuries did not constitute inadmissible hearsay, so counsel was not unreasonable in stipulating to its admission. Additionally, defendant was not prejudiced by counsel's failure to object to Zych's testimony,

13

even though the testimony identifying defendant fell outside of the hearsay exception. Defendant's identity was not at issue so the hearsay statement was immaterial, and Zych's testimony was cumulative. *Supra* ¶ 29.

¶ 43    Third, defendant argues counsel was ineffective for failing to object to "the State's foundationless photographs that they introduced at trial." We find that the record reflects the State properly laid foundation for the photographs. The State asked Broihan whether she recognized the photographs, how she recognized them, and if they were fair and accurate representations of her injuries. Even though Broihan could not recall whether she took several of the photographs, she testified that they were fair and accurate representations of her injuries after the incident. Further, even if some photographs were improperly admitted, there is no indication that those photographs prejudiced defendant. A number of other photographs depicting the injuries were admitted and the court made no indication it was relying upon the allegedly improperly admitted photographs. Defense counsel's decision not to object to the admission of the photographs was also the result of sound trial strategy. *People v. Probst*, 344 Ill. App. 3d 378, 387 (2003) ("Whether to object to matters such as foundation for evidence is, by and large, a matter of trial strategy."). Defense counsel relied heavily on the photographs to support defendant's contention that the encounter was not nearly as physical or violent as Broihan portrayed.

¶ 44    Fourth, defendant claims that counsel was ineffective for proceeding with the motion *in limine* hearing without knowing which statements the State sought to admit. Our review of the record shows that defense counsel had adequate time to consider the State's motion. Counsel was provided the medical records and was aware which pages contained the hearsay statement. The court also read the statements for defense counsel prior to issuing its ruling. Further, as outlined

14

above (*supra* ¶ 29) this argument fails because defendant failed to establish he was prejudiced by the admission of Zych's or Hickox's testimony identifying defendant as the cause of the injuries.

¶ 45　　　　Fifth, defendant argues counsel was ineffective by commenting "that's a new one" after one of defendant's answers on direct examination. Even if the comment was an improper comment on defendant's credibility, the court is presumed to recognize and disregard improper comments by counsel and only consider competent evidence in ruling on the merits of a case. *People v. Richardson*, 123 Ill. 2d 322, 361 (1988). Defendant does not point to anything in the record which rebuts this presumption, and instead only speculates that the court did not find defendant credible because of this singular comment. However, the court was clear that it did not find defendant credible because he "painted himself as a savior at times, and his story and accounts do not line up with the facts that the Court has taken into account." Defendant has therefore failed to demonstrate counsel's comment was prejudicial given the presumption that the court disregarded any improper comments by counsel and its clear statement explaining why it found defendant not credible. Defendant has failed to establish either that his counsel was ineffective or that he was prejudiced by the alleged errors. As we have found no error, there is no cumulative error. See *Green*, 2017 IL App (1st) 152513, ¶ 118.

¶ 46　　　　　　　　　　　　　　　　　III. CONCLUSION

¶ 47　　　　The judgment of the circuit court of Du Page County is affirmed.

¶ 48　　　　Affirmed.